Filed 2/16/16  Saterbak v. JP Morgan Chase Bank CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LAURA SATERBAK, | D066636 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00084605-CU-OR-CTL) |
| JP MORGAN CHASE BANK, N.A. as attorney-in-fact for CITIBANK, N.A. as Trustee for STRUCTURED ASSET MORTGAGE INVESTMENT II TRUST 2007-AR7 MORTGAGE PASS-THROUGH CERTIFICATES 2007-AR7, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R.Wohlfeil, Judge.  Affirmed.

Law Offices of Richard L. Antognini and Richard L. Antognini, for Plaintiff and Appellant.

Bryan Cave, Glenn J. Plattner and Richard P. Steelman, Jr., for Defendant and Respondent.

Laura Saterbak appeals a judgment dismissing her first amended complaint (FAC) after the sustaining of a demurrer without leave to amend. Saterbak claims the assignment of the deed of trust (DOT) to her home by Mortgage Electronic Registration Systems, Inc. (MERS) to Structured Asset Mortgage Investment II Trust 2007-AR7 Mortgage Pass-Through Certificates 2007-AR7 (2007-AR7 trust or Defendant) was invalid. Arguing the assignment occurred after the closing date for the 2007-AR7 trust, and that the signature on the instrument was forged or robo-signed, she seeks to cancel the assignment and obtain declaratory relief. We conclude Saterbak lacks standing and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2007, Saterbak purchased real property on Mount Helix Drive, La Mesa, California through a grant deed. She executed a promissory note (Note) in May 2007, in the amount of $1 million, secured by the DOT. The DOT named MERS as the beneficiary, "solely as nominee for Lender and Lender's successors and assigns." It acknowledged MERS had the right "to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property."

On December 27, 2011, MERS executed an assignment of the DOT to "Citibank, N.A. as Trustee for [2007-AR7 trust]." The assignment was recorded nearly a year later, on December 17, 2012. It is this assignment that Saterbak challenges. The 2007-AR7 trust is a real estate mortgage investment conduit (REMIC) trust; its terms are set forth in a pooling and servicing agreement (PSA) for the trust, which is governed under New

2

York law. Pursuant to the PSA, all loans had to be transferred to the 2007-AR7 trust on or before its September 18, 2007, closing date.

Saterbak fell behind on her payments. On December 17, 2012, Citibank N.A. substituted and appointed National Default Servicing Corporation (NDS) as trustee under the DOT. The substitution of trustee form was executed by JPMorgan Chase Bank, N.A. (hereafter Chase) as attorney-in-fact for Citibank N.A., trustee for the 2007-AR7 trust. NDS recorded a notice of default on December 17, 2012. By that point, Saterbak had fallen $346,113.99 behind in payments. On March 19, 2013, NDS recorded a notice of trustee's sale, scheduling a foreclosure sale for April 10, 2013. By that point, Saterbak owed an estimated $1,600,219.13.[1]

Saterbak filed suit in January 2014. She alleged the DOT was transferred to the 2007-AR7 trust four years after the closing date for the security, rendering the assignment invalid. She further alleged the signature on the assignment document was robo-signed or a forgery. She sought to cancel the assignment as a "cloud" on her title pursuant to Civil Code[2] section 3412. She also sought declaratory relief that the same defects rendered the assignment void.

In May 2014, the trial court sustained Chase's demurrer. It held Saterbak lacked standing to sue based on alleged noncompliance with the PSA for 2007-AR7 trust

---

[1]    The parties do not dispute Saterbak is in arrears on her debt obligations and a foreclosure sale has yet to take place.

[2]    All further statutory references are to the Civil Code unless otherwise specified.

3

because she did not allege she was a party to that agreement. The court granted Saterbak leave to amend to plead a different theory for cancellation of the DOT.

Saterbak filed the FAC in May 2014. The FAC asserted the same causes of action for cancellation of the assignment and declaratory relief premised on the same theories of untimely securitization of the DOT and robo-signing. However, it claimed it "emphatically does not within this action seek to challenge . . . any Foreclosure Proceedings and or Trustee's Sale."

Chase demurred and requested judicial notice of the following instruments: the DOT, the corporate assignment DOT, substitution of trustee, notice of default, and notice of trustee sale. The trial court granted Chase's request for judicial notice and sustained its demurrer. The court held, "Despite the arguments made by Plaintiff, the FAC does, in fact, allege that the assignment is void because the loan was not moved into the securitized trust in a timely manner." As it had previously, the court held Saterbak lacked standing to sue based on alleged noncompliance with the PSA, as she was not a party to that agreement. The court also rejected Saterbak's robo-signing theory for lack of standing, stating she had not alleged that she "relied" on the assignment or sustained injury from it. The court denied leave to amend, noting the FAC was Saterbak's second attempt and concluding there was no possibility she could remedy her standing deficiencies through amendment.

The court entered judgment for Chase on August 12, 2014. Saterbak timely appealed.

DISCUSSION

"On appeal from a judgment of dismissal entered after a demurrer has been sustained, this court reviews the complaint de novo to determine whether it states a cause of action. [Citation.] We assume the truth of all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Folgelstrom v. Lamps Plus, Inc.* (2011) 195 Cal.App.4th 986, 989-990.) We may consider matters that are properly judicially noticed. (*Four Star Electric, Inc. v. F & H Construction* (1992) 7 Cal.App.4th 1375, 1379.)

"If the trial court has sustained the demurrer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

Central to this appeal is whether as a borrower, Saterbak has standing to challenge the assignment of the DOT on grounds that it does not comply with the PSA for the securitized instrument. A similar issue is currently pending before the California Supreme Court in *Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495,

5

review granted August 27, 2014, S218973 (*Yvanova I*).[3] Based on the current state of the

law, we conclude Saterbak lacks standing to challenge the assignment as invalid under

the PSA or the product of robo-signing. For the reasons discussed below, the trial court

properly sustained Defendant's demurrer to the FAC without leave to amend.

## I. STANDING

A. *Saterbak Bears the Burden to Demonstrate Standing*

"Standing is a threshold issue, because without it no justiciable controversy

exists." (*Iglesia Evangelica Latina, Inc. v. Southern Pacific Latin American Dist. of the*

*Assemblies of God* (2009) 173 Cal.App.4th 420, 445.) "Standing goes to the existence of

a cause of action." (*Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles*

(2006) 136 Cal.App.4th 119, 128.) Pursuant to Code of Civil Procedure section 367,

"[e]very action must be prosecuted in the name of the real party in interest, except as

otherwise provided by statute."

Saterbak contends the 2007-AR7 trust bears the burden of proving the assignment

in question was valid. This is incorrect. As the party seeking to cancel the assignment

---

3    The California Supreme Court is reviewing this issue: "In an action for wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?" (*Yvanova v. New Century Mortgage Corp.* (2014) 331 P.3d 1275 (*Yvanova II*).) Unlike this case, *Yvanova* involved a challenge to a foreclosure sale that had already occurred. (*Yvanova I*, *supra*, 226 Cal.App.4th at p. 498.) However, the Supreme Court also granted review in *Keshtgar v. U.S. Bank, N.A.,* review granted October 1, 2014, S220012, which involved a preforeclosure challenge based on alleged deficiencies in the assignment of the deed of trust. The Supreme Court has deferred the appeal in *Keshtgar* pending disposition of *Yvanova I*. (*Keshtgar v. U.S. Bank, N.A.* (2014) 334 P.3d 686.)

6

through this action, Saterbak "must be able to demonstrate that . . . she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical." (*Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 315.)

Saterbak's authorities do not suggest otherwise. She cites *Fontenot*, but that case actually held "MERS did not bear the burden of proving a valid assignment"—instead, "the burden rested with plaintiff affirmatively to plead facts demonstrating the impropriety." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 270 (*Fontenot*).) Saterbak also cites *Cockerell* and *Neptune*, but those cases merely held that an assignee *who files suit to enforce an assigned right* bears the burden of proving a valid assignment. (*Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 292; *Neptune Society Corp. v. Longanecker* (1987) 194 Cal.App.3d 1233, 1242.)

B. *Saterbak Lacks Standing to Challenge the Assignment*

Saterbak alleges the DOT was assigned to the 2007-AR7 trust in an untimely manner under the PSA. Specifically, she contends the assignment was void under the PSA because MERS did not assign the DOT to the 2007-AR7 trust until years after the closing date. Saterbak also alleges the signature of "Nicole M. Wicks" on the assignment document was forged or robo-signed.

These theories fail because Saterbak has not shown that *she* has standing to challenge the 2007-AR7 trust's claim to title. "As an unrelated third party to the alleged securitization, . . . [Saterbak] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions." (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 (*Jenkins*).)

7

Even were we to assume the assignment was invalid, the true victim was not Saterbak but the original lender, which suffered the unauthorized loss of the security tied to its promissory note.

*Jenkins* is instructive. In that case, a borrower brought a preemptive action to challenge a defendant's ability to foreclose. "The crux of Jenkins's lawsuit [was] based on her theory her loan was pooled with other home loans in a securitized investment trust, which is purportedly now managed by B of A, as the acting trustee, without proper compliance with the investment trust's pooling and servicing agreement." (*Jenkins*, *supra*, 216 Cal.App.4th at p. 505.) The borrower sought an order declaring the untimely assignment of the promissory note to the investment trust " 'void and a legal nullity.' " (*Id.* at p. 511.) However, the court held she could not show an actual controversy between herself and the defendant. Even if an improper securitization (or any other invalid assignment of the promissory note) occurred, the court concluded the relevant parties were the transferors and transferees of the note. Therefore, Jenkins lacked standing to enforce the pooling and servicing agreement, as "an unrelated third party to the alleged securitization." (*Id.* at pp. 514-515.) Moreover, "Jenkins [was] not the victim of such invalid transfers because her obligations under the note remained unchanged." (*Ibid.*)

Here, the relevant parties to the assignment were MERS and the 2007-AR7 trust. Even if the DOT was transferred to the 2007-AR7 trust after the closing date specified in the PSA, Saterbak is an "unrelated third party to the alleged securitization" and lacks standing to enforce the PSA. (*Jenkins*, *supra*, 216 Cal.App.4th at p. 515.) She likewise

8

lacks standing to challenge the assignment on robo-signing grounds because she is a nonparty to the assignment whose rights were not affected by it.

Critically, Saterbak cannot show *she* was the victim of any invalid transfer because her obligations under the note remained unchanged.  (*Jenkins*, *supra*, 216 Cal.App.4th at p. 515.)  "Absent any prejudice, [borrowers] have no standing to complain about any alleged lack of authority or defective assignment."  (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85 (*Siliga*).)  There is no prejudice to Saterbak because "an assignment merely substituted one [trustee] for another, without changing her obligations under the note."  (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272 [no prejudice from assignment of note]; *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507 (*Herrera*) [same]; see *Siliga*, *supra*, at p.85 [no prejudice, and hence no standing, where borrowers did not dispute they were in default and assignment did not change their debt obligations].)[4]

Saterbak cites *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, which held that a borrower could challenge a nonjudicial foreclosure based on alleged defects in the assignment pursuant to a securitized trust's pooling and servicing agreement.

---

[4]     A federal district court reached the same conclusion in Saterbak's parallel case against the loan servicer.  (*Saterbak v. National Default Servicing Corp.* (S.D.Cal. Oct. 1, 2015, Civ. No. 15-CV-956-WQH-NLS) 2015 WL 5794560, at *7 ["Plaintiff was not party to the assignment of the deed of trust, and her rights were not affected by it. Plaintiff's obligations under the Deed of Trust were only affected by the assignment . . . insofar as they altered the party to whom the Plaintiff was obliged. Therefore, Plaintiff does not have standing to challenge the securitization of her loan or any subsequent assignment of the Deed of Trust."].)

However, no California court has followed *Glaski* on this point, and the New York case upon which *Glaski* relied has been overturned. (*Wells Fargo Bank, N.A. v. Erobobo* (N.Y. App. Div. 2015) 127 A.D.3d 1176, 1178 ["Erobobo, as a mortgagor whose loan is owned by a trust, does not have standing to challenge the plaintiff's possession or status as assignee of the note and mortgage based on purported noncompliance with certain provisions of the PSA"]; see *Rajamin v. Deutsche Bank Nat'l Trust Co.* (2d Cir. 2014) 757 F.3d 79, 86-87 [rejecting *Glaski's* interpretation of New York law].) We conclude *Jenkins*, *supra*, 216 Cal.App.4th 497 is the more persuasive authority and decline to follow *Glaski*. Saterbak lacks standing to challenge alleged defects in the MERS assignment of the DOT to the 2007-AR7 trust.

C. *The DOT Does Not Confer Standing*

Saterbak argues "clear language" in the DOT and "the rules of adhesion contracts" confer standing. We disagree. In signing the DOT, Saterbak agreed the Note and DOT could be sold "one or more times without prior notice." She further agreed:

> "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."[5]

---

5       As the court explained in *Fontenot*: "MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred

"The authority to exercise all of the rights and interests of the lender necessarily includes the authority to assign the deed of trust." (*Siliga*, *supra*, 219 Cal.App.4th at p. 84; see *Herrera*, *supra*, 205 Cal. App.4th at p. 1504 [interpreting language identical to Saterbak's DOT to give MERS "the right to assign the DOT"].) The federal court adjudicating Saterbak's parallel case against her loan servicer cited the above-quoted language in the DOT to reject the same securitization theory proffered here. (*Saterbak v. National Default Servicing Corp.*, *supra*, 2015 WL 5794560, at *7.)

Saterbak nevertheless points to language in the DOT that only the "Lender" has the power to declare default and foreclose, while the "Borrower" has the right to sue prior to foreclosure in order to " 'assert the non-existence of a default or any other defense of Borrower to acceleration and sale.' " But these provisions do not change her standing obligations under California law; they merely give Saterbak the power to argue any defense *the borrower* may have to avoid foreclosure. As a nonparty to the assignment, Saterbak cannot challenge the assignment as invalid under the PSA. (*Jenkins*, *supra*, 216 Cal.App.4th at p. 515.)

Saterbak also points to the presuit notice provisions in the DOT to argue the DOT contemplates her action. She quotes language in the DOT requiring the Borrower and Lender to provide notice and a reasonable opportunity to repair before "any judicial

among members without requiring recordation in the public records. [Citation.] [¶] Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust. [Citation.] Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender." (*Fontenot*, *supra*, 198 Cal.App.4th at p. 267.)

action . . . that arises from the other party's actions pursuant to this Security Instrument." However, by Saterbak's own theory, her action does not arise "pursuant to *this* Security Instrument"; it is premised instead on a violation of the PSA. The presuit notice provisions in the DOT do not contemplate her action.

Finally, Saterbak contends the deed of trust is an adhesion contract, and, therefore, restrictive language that "deprives a borrower of the right to argue her loan has been invalidly assigned" must be "conspicuous and clear." She claims, "If the assignment clause was intended by the drafter to cutoff the borrower's right to challenge the assignment, it should have used clear language to that effect. It did not." As a rule, "contracts of adhesion are generally enforceable according to their terms, [but] a provision contained in such a contract cannot be enforced if it does not fall within the reasonable expectations of the weaker or 'adhering' party." (*Fischer v. First Internat. Bank* (2003) 109 Cal.App.4th 1433, 1446 (*Fischer*).) However, "[b]ecause a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor" (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272), together with the deed of trust securing it. Saterbak "irrevocably grant[ed] and convey[ed]" the Mount Helix property to the Lender; recognized that MERS (as nominee) had the right "to exercise any or all" of the interests of the Lender; and agreed that the Note, together with the DOT, could be sold one or more times without notice to her. There is no reasonable expectation from this language that the parties intended to allow Saterbak to challenge future assignments made to unrelated third parties. (Cf. *Fischer*, *supra*, 109 Cal.App.4th at pp. 1448-1449 [holding there was a triable issue of fact "as to whether the parties

12

mutually intended to permit cross-collateralization" on two separate loans, given ambiguity between the broadly worded dragnet clause and a " 'Related Document[]' " *incorporated by reference into the loan agreement* as to whether the parties mutually intended it].)[6]

The crux of Saterbak's argument is that she should be able to bring a preemptive action to determine whether the 2007-AR7 trust may initiate a nonjudicial foreclosure. She argues, "If the alleged 'Lender' is not the true 'Lender,' " it "has no right to order a foreclosure sale."  However, California courts do not allow such preemptive actions because they "would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature."  (*Jenkins*, *supra*, 216 Cal.App.4th at p. 513; see *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1156 (*Gomes*) ["California's nonjudicial foreclosure law does not provide for the filing of a lawsuit to determine whether MERS has been authorized by the holder of the Note to initiate a foreclosure"].)  As the court reasoned in *Gomes*:

> "[The borrower] is not seeking a remedy for misconduct.  He is seeking to impose the additional requirement that MERS demonstrate in court that it is authorized to initiate a foreclosure.  . . . [S]uch a requirement would be inconsistent with the policy

---

6       Saterbak also cites *Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, which involved a dispute over auto insurance coverage.  The court stated the general rule that "to be enforceable, any [insurance] provision that takes away or limits coverage *reasonably expected* by an insured must be 'conspicuous, plain and clear.' " (*Id.* at p. 1204, italics added.)  Even if *Haynes* were relevant to the current context, there is no reasonable expectation created in the DOT that Saterbak would have the power to challenge assignments made to unrelated third parties. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 272.)

13

behind nonjudicial foreclosure of providing a quick, inexpensive and efficient remedy." (*Gomes*, *supra*, at p. 1154, fn. 5.)[7]

D. *Section 3412 Does Not Change Saterbak's Standing Obligations*

Saterbak seeks to cancel the assignment pursuant to section 3412. She argues that to withstand a demurrer, she merely needs to allege the assignment was void or voidable and that it could cause serious injury. We disagree; nothing in section 3412 changes Saterbak's standing obligations.

To state a cause of action under section 3412, Saterbak must allege the assignment was void or voidable *against her*. (§ 3412 ["A written instrument, in respect to which there is reasonable apprehension that if left outstanding it may cause serious injury to a person *against whom* it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled"], italics added; see also *Johnson v. PNC Mortg.* (N.D.Cal. 2015) 80 F.Supp.3d 980, 990 (*Johnson III*) [section 3412 requires "the challenged instrument be void or voidable *against the party seeking to cancel it*"].) *Johnson III* dismissed a similar cause of action under section 3412 because the plaintiffs, borrowers like Saterbak, failed to "allege a plausible case that the assignment is 'void or voidable' against them." (*Johnson III*, *supra*, at p. 990.) Here, Saterbak fails to state a

---

7    Saterbak misconstrues *Gomes* in claiming the case holds "that a borrower can challenge the power of an alleged loan purchaser to foreclose if [the borrower] can allege specific facts showing the assignment is invalid." As discussed, *Gomes* holds that under California law, plaintiffs may not bring preemptive actions to challenge a defendant's power to foreclose. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1156.)

14

cause of action under section 3412 because she cannot allege that MERS's assignment of the DOT to the 2007-AR7 trust was void or voidable against her.

Saterbak also fails to allege "serious injury." She argues she "faces the prospect of losing her home due to the actions of an entity that has no power to foreclose because it does not own her [DOT]." However, even if the assignment was invalid, it could not "*cause* serious injury" because her obligations under the Note remained unchanged. (§ 3412, italics added).)

We again find support in *Johnson III*, *supra*, 80 F.Supp.3d 980. Borrowers in that case sought to cancel an invalid assignment of their deed of trust, claiming it cast a shadow on their title and continued to ruin their credit. The court rejected this theory of "serious injury" under section 3412 because nothing about the alleged infirmities in the assignment or notice documents changed the borrowers' payment obligations, and the borrowers did not deny they had defaulted. The court concluded: "It is not really the assignment, then, or its challenged provenance, that has stained their credit report. It is the fact that they defaulted." (*Johnson III*, at p. 989.) Likewise, here, the allegedly defective assignment did not alter Saterbak's payment obligations under the Note. Saterbak does not deny she defaulted or that her debt remains in arrears. Consequently, she cannot demonstrate how the allegedly invalid assignment could "*cause* serious injury" within the meaning of section 3412 if left outstanding. (§ 3412, italics added.)

More fundamentally, nothing in section 3412 changes Saterbak's standing obligations under California law. As discussed in detail above, "[a]bsent any prejudice,

15

[borrowers] have no standing to complain about any alleged lack of authority or defective assignment."  (*Siliga*, *supra*, 219 Cal.App.4th at p. 85.)

E.  *The Homeowner Bill of Rights Does Not Confer Standing*

For the first time on appeal, Saterbak relies on the California Homeowner Bill of Rights (HBOR) to claim standing.  She argues sections 2924.17 and 2924.12 allow her to challenge the alleged defects in MERS's assignment of the DOT to the 2007-AR7 trust.  In relevant part, section 2924.17, subdivision (a), provides an "assignment of a deed of trust . . . shall be accurate and complete and supported by competent and reliable evidence."  Section 2924.12, subdivisions (a) and (b) allow borrowers to bring an action for damages or injunctive relief for "a material violation of Section . . . 2924.17."

As Saterbak acknowledges, the HBOR went into effect on January 1, 2013. (§ 2923.4.)  The FAC alleges the DOT was assigned on December 27, 2011, and recorded on December 17, 2012.  Saterbak fails to point to any provision suggesting that the California Legislature intended for the HBOR to apply retroactively.  (*Myers v. Philip Morris Companies, Inc*. (2002) 28 Cal.4th 828, 841 ["California courts comply with the legal principle that unless there is an 'express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must have intended a retroactive application' "].)  Therefore, we conclude the HBOR does not grant Saterbak new rights on appeal.[8]

---

8       Saterbak contends the notice of trustee's sale was recorded after the HBOR went into effect.  However, the FAC challenges MERS's assignment of the DOT to the 2007-AR7 trust, not the notice of trustee's sale.  We further reject Saterbak's argument that the

16

Even were it otherwise, there is no basis to conclude the HBOR has dispensed with standing requirements under California law. For example, section 2924.12 authorizes a borrower to enjoin a "material" violation of section 2924.17. Saterbak fails to allege any violation that was material. We agree with the analysis in *Johnson v. PNC Mortgage* (N.D.Cal. Aug. 12, 2014, Civ. No. C 14-02976 LB) 2014 WL 3962662, at *13 (*Johnson I*):

> "[E]ven if Plaintiff[] were correct, and the assignment was a sham, the assignment would not have changed [her] payment obligations. It would have affected the lender and notice to future encumbrancers and purchasers (not Plaintiff[]). [Citation.] The court might reach a different result if, for example, Plaintiff[] contested the validity of the underlying debt or were a party to the assignment. [Citations.] On this record, however, the court finds that even if there were a violation [of the HBOR], it was immaterial."[9]

In summary, for all the reasons discussed above, we conclude Saterbak lacks standing to challenge MERS's assignment of the DOT to the 2007-AR7 trust.

---

HBOR "overruled" *Jenkins* and cases citing it: *Jenkins* was decided *after* the HBOR went into effect. (*Jenkins*, *supra*, 216 Cal.App.4th 497 [decided May 17, 2013].)

[9]    Saterbak contends if she were to lack standing, section 2924.17 would become a "nullity." To the contrary, this ruling does not impact the ability of a government entity to pursue civil or administrative remedies pursuant to section 2924.17, subdivision (c). Moreover, Saterbak's interpretation would render section 2924.12 a nullity, by reading the word "material" out of the statute. (*Johnson v. PNC Mortg.* (N.D.Cal. Nov. 21, 2014, Civ. No. C 14-02976 LB) 2014 WL 6629585, at *9-*10 (*Johnson II*) ["The court thinks that it is the Johnsons' position that makes part of § 2924.19 nugatory. They would read the term 'material' out of § 2924.19. The legislature could have made any 'violation' of the robo-signing law actionable; but it made actionable only 'material violation[s]' "].) Saterbak tries to distinguish *Johnson III*, *supra*, 80 F.Supp.3d at page 990 by claiming it did not involve claims under section 2924.17. Actually, it did, but the court dismissed these claims in its rulings on prior complaints. (See *Johnson I*, *supra*, 2014 WL 3962662, at *13-*14; *Johnson II, supra*, at *9-*10.)

A cause of action to cancel a written instrument under section 3412 sounds in equity. As a result, a debtor must generally allege tender or offer of tender of the amounts borrowed as a prerequisite to such claims. The tender requirement "is based on the theory that one who is relying upon equity in overcoming a voidable sale must show that he is able to perform his obligations under the contract so that equity will not have been employed for an idle purpose." (*Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 878, italics omitted.) However, the tender rule is not absolute. Tender is not required to cancel a written instrument that is *void* and not merely voidable, as a void instrument is a "nullity with no force or effect as opposed to one which may be set aside." (*Id.* at p. 876; see *Smith v. Williams* (1961) 55 Cal.2d 617, 620-621 [offer to restore not required in an action to cancel a void instrument under section 3412].)

Thus, a basic question is whether the alleged deficiencies in the assignment rendered MERS's assignment of the DOT to the 2007-AR7 trust void or voidable. Whereas "minor or technical defects" would not render a foreclosure sale void, substantial defects, "such as when there has been a failure to give notice of sale to the trustor or to specify the correct default in the notice of default," would. (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 11.) "Similarly, a sale is rendered void when the foreclosure sale is conducted by an entity that lacks authority to do so." (*Ibid.*)

*Ram* is a wrongful foreclosure case. Where, as here, the foreclosure sale has yet to occur, Saterbak is correct that courts typically have not required tender. (See, e.g., *Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1280; *Intengan*

*v. BAC Home Loans Servicing, LP* (2013) 214 Cal.App.4th 1047, 1053-1054; *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 225; *Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1373-1374.)  Because we affirm the judgment on standing grounds, we do not decide whether Saterbak was required to plead the ability or willingness to tender to cancel the assignment pursuant to section 3412.

### III. LEAVE TO AMEND

We must also consider whether Saterbak has demonstrated a reasonable probability that she could cure the defects that we have identified.  (*Schifando v. City of Los Angeles*, *supra*, 31 Cal.4th at p. 1081.)  Saterbak contends she could amend her complaint to "argue that the language in her [DOT] gives her the right to attack a void assignment of her loan."  As discussed in detail above, we conclude the DOT does not confer this right.  Because Saterbak has not shown how she could remedy her lack of standing to challenge MERS's assignment of the DOT to the 2007-AR7 trust, we conclude the trial court properly sustained Defendant's demurrer to the FAC without leave to amend.

19

DISPOSITION

The judgment is affirmed. Respondent 2007-AR7 trust shall recover its costs on appeal.

McCONNELL, P. J.

WE CONCUR:

HALLER, J.

McINTYRE, J.