Filed 4/4/25  Weissberg v. Peinado CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or
ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| STEPHEN WEISSBERG,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RENE PEINADO,<br><br>    Defendant and Appellant. | A169780<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-99-304332) |

Judgment debtor Rene Peinado appeals an order directing the sale of his homestead to satisfy a money judgment.  (Code Civ. Proc.,[1] § 704.760.)  He contends judgment creditor Stephen Weissberg failed to satisfy a prerequisite for such an order: showing that a sale is likely to yield sufficient proceeds to pay off, among other things, all senior liens on the property.  (§ 704.780, subd. (b).)  To fulfill that requirement here, Weissberg asserted that the alleged holder of a large senior lien, nonparty Peter Fazio, had agreed to discharge his lien in exchange for a greatly reduced amount that would bring the total payoff within the anticipated sale proceeds.

Peinado then sued Fazio, secured a judgment declaring that Fazio had not been validly assigned the lien, and presented the judgment to the trial court before it ruled on the sale order.  Peinado contends that the subsequent

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

issuance of the order was error considering his proof that an alleged compromise of the crucial lien, relied upon by Weissberg to meet the prerequisite sale conditions, could not have been made by Fazio as claimed. Peinado argues that without Fazio's reduced senior lien, the evidence failed to show how the sale proceeds would be able to satisfy the required statutory payoffs including all senior liens.  We agree.  The sale order must be reversed.

## I.  BACKGROUND

In 2003, Weissberg secured a judgment against Peinado for just under $500,000 and recorded an abstract of judgment, creating a lien on a residence Peinado owns in San Francisco.  After two renewals extending the time to enforce the judgment, the judgment's principal reached about $1.5 million.  In 2022, Weissberg secured a writ of execution and served a notice of levy on the property.

Weissberg then applied for an order to show cause (OSC) why a sale order should not issue.  (§ 704.760.)  He noted the property appeared to qualify for a homestead exemption of $600,000.  (§ 704.710, subd. (c); § 704.730.)[2]  He submitted a declaration by a realtor estimating the property's value at $3.1 to $3.7 million. Weissberg also identified two sets of liens on the property:  those senior and those junior to his lien.  (See § 704.760, subd. (c).)

---

[2] While this appeal was pending, Weissberg claimed to have discovered that Peinado was renting out the residence, disqualifying it for a homestead exemption.  (§ 704.710, subd. (c).)  On that basis, Weissberg unsuccessfully sought writ relief from this court (a fact of which we take judicial notice). (*Weissberg v. Superior Court* (A171013, denied Sep. 10, 2024); Evid. Code, § 452, subd. (d).)  In this appeal, both parties accept the property as a homestead.  Because that characterization of the property is a necessary premise underlying the order at issue, we likewise treat the property as a homestead for purposes of this appeal.

The list of senior liens included a deed of trust recorded in 2000 (DoT) in favor of Redwood Mortgage Investors VI as beneficiary (the Redwood lien). Weissberg listed its amount as "$50,000.00 (reduced per settlement)" and noted an "Assignment of Deed of Trust" to Fazio, recorded in 2009. Weissberg's lawyer declared, "The principal amount of the Redwood [lien] assigned to Peter Fazio . . . has been reduced to $50,000 pursuant to a settlement agreement in which I participated." The combined sum of the senior liens, including the $50,000, was about $265,000—a small fraction of the property's estimated value.

In opposing the issuance of an OSC, Peinado alleged that the current amount of the Redwood lien is at least $2.5 million (depending on how one calculates interest). He further disputed that the DoT had been validly assigned to Fazio. Without contesting Peinado's calculations, Weissberg noted the recorded assignment to Fazio and reiterated his claim that Fazio had agreed "to accept $50,000 on account of his lien interest." After a contested hearing, the court issued an OSC.

For the hearing on whether to issue a sale order, Peinado's opposition included a copy of a complaint he had just filed—or was about to file—against Fazio. The complaint sought a declaration that Fazio never acquired a right or interest in the note or DoT underlying the lien. Peinado argued that Fazio was unable to compromise the lien as represented by Weissberg.

At the June 2023 hearing, the court went through Peinado's submitted evidentiary objections and appointed an appraiser "so we know what we're talking about." Peinado also directed several legal objections at the sufficiency of Weissberg's application. After Peinado's counsel requested rulings, the court summarized Peinado's written arguments and, without discussion, rejected them. As for senior liens, the court commented, "Big

3

ticket item here is the $50,000 lien described in the moving papers. [Peinado] claims this lien is over two million dollars. However, [Weissberg's] counsel in his declaration . . . states that he was personally present at the settlement conference where that creditor set $50,000 . . . to compromise the claim." The court did not address the argument that Fazio would not have been authorized to compromise the lien because the alleged assignment to him was invalid.

After appointing an appraiser, the court received an appraisal amount of $3.5 million and set a hearing that allowed "supplemental briefing addressing the appraisal only."

Peinado nonetheless filed a brief opposing the sale. In it, he recapped past objections and argued the recent appraisal amount, when measured against existing liens, was insufficient to satisfy any part of Weissberg's judgment and therefore violated section 704.780, subdivision (b). Specifically, he claimed that because the appraised value of the home was $3.5 million and the senior liens exceeded $4.4 million, a forced sale would "not come close to producing a bid sufficient to satisfy any part of Weissberg's judgment." Central to this argument is the claim that the amount of the Redwood lien (which is senior to Weissberg's judgment) was not $50,000, as claimed by Weissberg, but in excess of $2.89 million. As proof, Peinado attached a copy of the judgment he had secured declaring that Fazio had "never acquired, held or possessed any rights in, to or under either the promissory note or deed of trust." And, the argument continued, because one cannot compromise a lien in which they have no interest, any purported settlement agreement between Fazio and Weissberg concerning the Redwood lien could not permit the reduced valuation of the lien to $50,000, as was necessary to bring the total amount of senior liens within a range that a forced sale might cover.

4

Weissberg did not reply to the merits of this claim; he moved to strike Peinado's opposition as beyond the scope of the hearing order. The court did not rule on the motion.

For the hearing on whether to order a sale, the court issued a tentative ruling stating only, "granted." At the start of the hearing, Peinado's counsel stated he would "welcome any comments that I can address as to the basis and the grounds for the granting of the motion." The court replied, "[I]t seems to me that [Peinado] took this particular hearing as an opportunity to just reargue why there should be no sale at all, but all of these arguments have been previously addressed and rejected."

Peinado's counsel noted that the parties had not addressed all his arguments. The newly completed appraisal valuing the property at $3.5 million now enabled Peinado to show that the Redwood lien of approximately $2.9 million, coupled with the $600,000 homestead exemption, by themselves exhausted the appraised value, leaving no equity to pay any of Weissberg's judgment. After addressing a comment by the court, counsel tried to return to his theme by stating, "We have the appraised value, and based on [it], we can now proceed determining under the statute whether the sale should go forward," but the court interjected, "The sale's going forward."

When counsel resumed his argument, he focused on the "Redwood lien, which [Weissberg] is claiming he somehow acquired or otherwise compromised and reduced to [$]50,000. [¶] Since the last hearing, there's now a judgment . . . finding that Mr. Fazio . . . , who[] Weissberg [claims] acquired some interest in this lien. . . . never had any interest. That lien is acknowledged to be senior. There's a judgment finding that Mr. Fazio didn't have any interest in [it] that he could have possibly conveyed to

5

Mr. Weissberg. So that senior lien alone, if you just do the math, exceeds the equity when [added] to the homestead exemption."

In response, Weissberg claimed the parties had addressed the "no equity" argument based on the realtor's initial estimate of the property's value, which was very close to the eventual appraised value. Weissberg said the court had "made a ruling based on . . . the settlement [he] had achieved with Mr. Fazio while [Fazio] was the record owner, reducing his claim to $50,000." He argued that the judgment against Fazio, secured in Weissberg's absence, was "not binding": He had been an "indispensable party" to the declaratory relief action, and to "rip away a settlement" for which he had paid consideration would deny him due process.

The court gave Peinado "the last word." Peinado explained that "the recent judgment went to whether Mr. Fazio ever acquired back in 2009 . . . any rights to this [DoT]. It didn't implicate Mr. Weissberg whatsoever. [He] was and remains free to strike any deal he wants with Mr. Fazio . . . . [But that] [d]oesn't mean that it has any impact on the lien . . . ."

Without discussing the Redwood lien issue, the court stated it would "adopt the tentative as granted." It signed a sale order that directs the sheriff to give Fazio $50,000 of the sale proceeds. Peinado appealed.

## II.  DISCUSSION

The Enforcement of Judgments Law (§ 680.010 et seq.) exempts certain types of property from levy to enforce a judgment. (§ 703.010 et seq.) One exemption is for a judgment debtor's principal dwelling (or "homestead"). (§ 704.710, subd. (c).) The Homestead Exemption article (§ 704.710 et seq.) bars the sale of a dwelling to satisfy a money judgment "except pursuant to a court order for sale obtained under this article." (§ 704.740, subd. (a).) To apply for such an order, a judgment creditor must submit certain information

6

including the amounts of the applicable homestead exemption and of "any liens or encumbrances on the dwelling." (§ 704.760, subds. (b)–(c).) The court must then hold a hearing at which the judgment debtor can show cause why the court should not issue a sale order. (§ 704.770.)

At that hearing, the court must determine the amount of the applicable homestead exemption and the fair market value of the dwelling and then "make an order for sale of the dwelling subject to the homestead exemption, unless the court determines that the sale of the dwelling would not be likely to produce a bid sufficient to satisfy any part of the amount due on the judgment pursuant to Section 704.800." (§ 704.780, subd. (b).) The latter provision requires that a sale be canceled unless the sheriff receives a bid exceeding the sum of (1) the homestead exemption, (2) the amount needed to satisfy all liens senior to the judgment lien and (3) some further amount to satisfy at least part of the judgment lien. (§ 704.800, subd. (a); see *Bratcher v. Buckner* (2001) 90 Cal.App.4th 1177, 1189.) In sum, a court can order a sale only if it finds that the proceeds will likely suffice to cover the homestead exemption, all senior liens, and some of the judgment lien.[3]

---

[3] Peinado also claims the court erred in issuing an OSC because Weissberg's application did not list *all* liens on the property, junior as well as senior. (§ 704.760, subd. (c).) Substantively, Weissberg responds he did not omit any junior liens and, even if he did, any resultant error was harmless, as a sale wipes out *all* junior liens. Procedurally, he notes Peinado's failure to offer a transcript of the initial hearing at which the court decided to issue an OSC. While that omission would likely doom the junior lien argument (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [issue must be resolved against appellant who fails to offer adequate record]), we need not decide, given our agreement with Peinado's distinct argument that the sale order must be reversed because the judgment against Fazio precluded the necessary finding that the proceeds of a sale would likely suffice to pay all senior liens. We

The parties dispute the standard under which we review a sale order. Peinado contends we review for abuse of discretion; Weissberg, for substantial evidence—specifically, substantial evidence to support the factual finding that a sale will likely yield a bid in the requisite amount. Neither party cites authority supporting their view on this possibly novel issue.

Fortunately, we need not resolve it. The lone disputed issue on which this appeal turns involves neither factfinding nor an exercise of discretion, but a pure question of law: Did the default judgment against Fazio, declaring he has no right or interest in the Redwood lien, operate to prevent the court from implicitly ruling, as it necessarily did, that Fazio has the ability to discharge the lien, so that his agreement to accept $50,000 to do so ensures that the proceeds of a sale will satisfy the lien? Whatever the ultimate standard of review, we review that preliminary legal issue de novo. (See, e.g., *Rubin v. Ross* (2021) 65 Cal.App.5th 153, 162 [noting overall abuse of discretion standard but applying de novo review to issue of impact of automatic bankruptcy stay on request for renewal of judgment].) Once we review the

_____

need not decide if the sale order was *also* improper because Weissberg failed to list all junior liens on the application.

More broadly, Weissberg asserts the transcript omission warrants rejection of the appeal in toto. We disagree. Peinado has appealed the sale order. He sued Fazio *after* the trial court issued the OSC. Thus, at the hearing at which the court decided to issue the OSC, Peinado could not have raised the not-yet-existent judgment against Fazio. He has provided a transcript of the final hearing at which he did raise that judgment, and the court nonetheless issued the sale order. The lack of a transcript of the initial hearing is thus immaterial. And in any event, the dispositive issue on appeal involves a question of law, not a discretionary ruling. The decisions Weissberg cites hold that "[t]he absence of a record concerning what actually occurred at the hearing precludes a determination that the court abused its discretion." (*Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259.) Here, the judgment against Fazio left the trial court without discretion to order a sale.

8

court's ruling on that legal question, we must assess, in light of our conclusion, the court's ruling on the ultimate issue of whether a sale was likely to generate proceeds sufficient to pay the senior liens, homestead exemption, and some part of the judgment lien.

Whether we review that ultimate factual question for substantial evidence or abuse of discretion does not matter, for the facts concerning the Redwood lien are not disputed, just the legal consequence of Peinado's newly obtained judgment concerning the lien. This issue is dispositive because—as Peinado has repeatedly stressed, and Weissberg has never denied—the face amount of the Redwood lien is sufficiently large, given the appraised value of the property, the amount of the homestead exemption, and the value of the other senior liens, to preclude the finding essential to any sale order:  namely, that the proceeds will likely suffice to satisfy all senior liens plus at least a part of the judgment lien.  (§ 704.800.)  The trial court necessarily made an implicit finding to that effect, and Weissberg identifies no basis on which it could have done so other than by accepting his claim that Fazio has the legal capacity to deem the lien satisfied in exchange for $50,000 of the proceeds.[4]

---

[4] On appeal, Weissberg suggests it is a "reasonable inference that the Redwood Mortgage Trust Deed has been removed by reason of [a 2010] Judgment Quieting Title" noted in a title report submitted by Peinado. The import of the notation is unclear.  More importantly, Weissberg's verified application unequivocally listed the Redwood lien as "a lien or encumbrance on the dwelling as of February 22, 2023 . . . superior to [Weissberg]'s lien." (Underscoring omitted.)  His filings in support of a sale order consistently presumed the lien's validity; he identifies no point at which he suggested otherwise.  Weissberg cannot change his theory on appeal to argue the lien was *removed* a decade earlier.  (*Moerman v. State of California* (1993) 17 Cal.App.4th 452, 460.)  And he certainly cannot raise a new theory turning on an unexplored factual issue.  (*In re Marriage of Priem* (2013) 214 Cal.App.4th 505, 510–511 [allowing new theory on appeal that "involves only a legal question determinable from facts which not only are

9

As noted, the trial court did not identify any reason to reject Peinado's contention that, because a judgment declares Fazio has no rights under the lien, Fazio is unable to discharge the lien in return for $50,000 (or any other sum) from the proceeds of a sale. On appeal, Weissberg responds in three ways: (1) he criticizes the declaratory relief action as "a [c]ynical [p]loy" meant to "thwart and delay the enforcement of [the] judgment"; (2) he asserts in passing that Peinado "lacks standing to challenge an assignment of a deed of trust to which he is not a party," citing *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 814 (*Saterbak*); and (3) he claims his " 'vested rights' " in his settlement with Fazio made him an indispensable party to the declaratory relief action, so the judgment entered in his absence cannot bind him and is subject to collateral attack. These arguments fail.

Weissberg's first point is not in fact legal argument but ad hominem criticism. He cites no authority suggesting Peinado's motive in securing the declaratory judgment alters its effect. He refers in passing to Peinado's "manipulation and resulting estoppel," but he develops no legal argument that Peinado is estopped to raise the declaratory judgment here.

Weissberg's second claim—lack of standing—fails for two reasons: His lone authority, *Saterbak*, *supra*, 245 Cal.App.4th 808, is easily distinguished, and even if *Saterbak* did imply that Peinado lacked standing to seek declaratory relief, Weissberg has not shown that such a lack of standing would make the declaratory judgment not merely erroneous but void, and thus subject to collateral attack—or that he has in fact successfully made a collateral attack on the judgment.

uncontroverted in the record, but which could not be altered by the presentation of additional evidence"].)

10

First, Peinado's action against Fazio is nothing like the litigation in *Saterbak*. Saterbak, who had defaulted on her mortgage, tried to avoid an impending *nonjudicial* foreclosure by filing a preemptive suit against the trustee of a real estate mortgage investment conduit (REMIC) trust to which her deed of trust had been assigned. (*Saterbak*, *supra*, 245 Cal.App.4th at pp. 811–812.) She sought a judgment declaring the assignment invalid and holding the trust thus lacked authority to initiate a nonjudicial foreclosure. (*Ibid.*) She contended the deed of trust had been assigned to the REMIC trust after the deadline for such transfers set by the pooling and servicing agreement (PSA) governing the REMIC, making the assignment void. (*Ibid.*)

The court noted the Legislature's intent that the nonjudicial foreclosure process enable expeditious enforcement of mortgage obligations without—as its name implies—judicial involvement. (*Saterbak*, *supra*, 245 Cal.App.4th at p. 814.) In that statutory context, the court readily concluded that a homeowner lacks standing to challenge an assignment of her deed of trust to a REMIC based on a third party's alleged breach of a contract to which the homeowner is a stranger (the PSA)—particularly in a suit preempting the nonjudicial foreclosure process. (*Id.* at pp. 814–815.) *Saterbak* offers Weissberg no support: In challenging the assignment of his DoT, Peinado did not purport to enforce a contract to which he is a stranger, or seek to forestall the use of a *nonjudicial* enforcement mechanism. He sought to affect a *judicial* mechanism—the procedure to secure a judicial sale order (§ 704.740).

The standing theory also fails for a reason Weissberg does not address. Even if Peinado did lack standing to seek a judgment declaring the assignment invalid, Weissberg cites no authority suggesting such a lack of standing can deprive a court of fundamental jurisdiction, making its judgment not just erroneous but void. (See *Doe v. Regents of University of California* (2022)

11

80 Cal.App.5th 282, 305 (*Doe*) [discussing narrow circumstances in which judgment is void for lack of fundamental jurisdiction].) Many errors subject a judgment to *direct* attack, but only defects so grave as to deprive a court of "fundamental jurisdiction" subject a judgment to collateral attack as void. (2 Witkin, Cal. Procedure (6th ed. 2021) Jurisdiction, §§ 354–355, pp. 965–969 [history of rule].) " 'A judgment is void if the court rendering it lacked subject matter jurisdiction or jurisdiction over the parties.' [Citation.] ' "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and "thus vulnerable to direct or collateral attack at any time." ' " (*Doe*, at p. 295.)[5]

While we question whether lack of standing is one of the few defects that make a judgment void and subject to collateral attack, we need not decide the issue. Weissberg devotes only one sentence to the idea that Peinado lacked standing, and none at all to whether that would make the judgment *void*. "Whether an appellate court will entertain a belatedly raised legal issue always rests within the court's discretion"—even if the issue is one of law raised as a basis to affirm (and thus bolstered by the presumption in favor of affirmance). (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th

---

[5] In somewhat different contexts, courts have held that "lack of standing as a real party in interest is not jurisdictional; it is equivalent only to a failure to state a cause of action." (*County of Riverside v. Loma Linda University* (1981) 118 Cal.App.3d 300, 319.) The *Riverside* court relied on that proposition to hold that a party raising lack of standing to attack a judgment *directly*—i.e., on appeal—must show prejudice, as the error is not jurisdictional. (*Riverside*, at pp. 319–320; see also *Jo Redland Trust, U.A.D. 4-6-05 v. CIT Bank, N.A.* (2023) 92 Cal.App.5th 142, 165 [complaint filed in name of nonexistent entity is not void ab initio but can be amended to name new plaintiff], quoting *Riverside*.)

12

1257, 1275, fn. 3.) We will not exercise our discretion to reach an issue raised only by implication, without supporting argument. (See *Dhital v. Nissan North America, Inc.* (2022) 84 Cal.App.5th 828, 845, fn. 8, review granted Feb. 1, 2023, S277568, review dismissed Dec. 18, 2024 [declining to address alternative basis to affirm that respondent "touched on . . . only briefly in a footnote"].)

Weissberg's final contention is that he was an indispensable party to Peinado's action against Weissberg, so the judgment therein cannot bind him and is subject to collateral attack. For argument's sake, we assume Weissberg is right that his settlement with Fazio, premised on the latter's apparent status as assignee of the Redwood lien, made Weissberg indispensable to an action against Fazio seeking to negate that status. On that assumption, the court acted in the absence of an indispensable party when it entered a judgment declaring the assignment invalid.

It does not follow, however, that the judgment was void and of no effect *as to Fazio*. Rather, as our colleagues in Division Four explained in *Doe*, *supra*, 80 Cal.App.5th 282, an indispensable party's absence from a case means only that the court cannot enter a judgment that will bind the absent party, who will remain free to collaterally attack the judgment by seeking an inconsistent one. (*Id.* at pp. 305–307.) The court still can issue a valid judgment binding the parties before it. (*Ibid.*)

In *Doe*, the court addressed whether an arguably indispensable party who was not named in a mandamus proceeding could move to vacate the mandamus decision because it was rendered without her participation. The court held that " 'failure to join "indispensable" parties does not deprive a court of the power to make a legally binding adjudication between the parties properly before it.' [Citation.] To be sure, ' "[a]n indispensable party is not

13

bound by a judgment in an action in which he was not joined." ' [Citation.] But failing to join an indispensable party ' " 'is not "a jurisdictional defect" in the fundamental sense.' " ' " (*Doe*, *supra*, 82 Cal.App.5th at p. 305.) Instead, " ' " 'even in the absence of an "indispensable" party, the court still has the power to render a decision as to the parties before it which will stand. It is for reasons of equity and convenience, and not because it is without power to proceed, that the court should not proceed with a case where it determines that an "indispensable" party is absent and cannot be joined.' " ' " (*Id.* at p. 306.)

The same is true of Peinado's action against Fazio. Weissberg suggests no reason the court handling that action could not render a decision as to the parties before it—Peinado and Fazio—that would bind those parties. (*Doe*, *supra*, 82 Cal.App.5th at p. 306 [absent indispensable party, " ' " 'court still has the power to render a decision as to the parties before it which will stand' " ' "].) Weissberg is right that the judgment does not bind *him*, just as the mandamus order in *Doe* did not bind *her*. He is thus free, as he has pointed out, to attack the judgment collaterally. (See, e.g., *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 667 (*Blechman*) [affirming contrary judgment entered in later action filed by absent, indispensable parties].)

What Weissberg could not do was ask the court to pretend that the declaratory judgment against Fazio did not exist. Unless and until Weissberg makes a successful collateral attack on that judgment, it "stand[s]" as to Fazio. (*Doe*, *supra*, 82 Cal.App.5th at p. 306.) The sale order's necessary premise was that Fazio is willing *and able* to discharge the Redwood lien in exchange for $50,000. But a final judgment declares Fazio has no rights in

14

the lien.  As long as that judgment stands, a court cannot base a decision to issue a sale order on the contrary premise that Fazio *can* discharge the lien.

The main case Weissberg cites to argue the contrary, *Blechman*, *supra*, 157 Cal.App.4th 662, is distinguishable.  After Blechman defaulted on a loan secured by a deed of trust in favor of beneficiary Washington Mutual Bank (WAMU), trustee California Reconveyance Company (CRC) foreclosed on the property and sold it to Gladmac.  (*Id.* at p. 664.)  When Blechman sued to set aside the sale, WAMU and CRC demurred, but Gladmac defaulted.  (*Ibid.*)  Before the court ruled on WAMU and CRC's demurrer, Blechman dismissed them; he then obtained a default judgment against Gladmac declaring the sale "null and void."  (*Ibid.*)  WAMU and CRC filed a new action collaterally attacking that judgment by seeking a declaration the sale was valid.  (*Id.* at p. 665.)  Gladmac cross-complained for a declaration that it had clear title.  (*Ibid.*)  The trial court held that (1) WAMU and CRC had been indispensable parties to Blechman's action and could collaterally attack the judgment; (2) the trustee's sale had been valid; and (3) Gladmac had good title.  (*Ibid.*)

Affirming, the Second Appellate District agreed that the beneficiary and trustee are indispensable in an action attacking a trustee's sale.  (*Blechman*, *supra*, 157 Cal.App.4th at p. 668.)  Essentially conceding as much, Blechman argued it was nonetheless " 'too late for Gladmac to complain,' " as it was bound by a valid final judgment.  (*Id.* at p. 668.)  Disagreeing, the court noted that a "consequence of failing to join (or dismissing) an indispensable party is to invite an inconsistent judgment"; the judgment did not bind WAMU and CRC, so they were free to seek a contrary judgment affirming the sale, making the judgment secured in their absence "essentially illusory."  (*Ibid.*)  The court also rejected Blechman's fallback request that it affirm the new judgment insofar as it validated the sale as to WAMU and CRC but let the

prior judgment stand as to Gladmac.  (*Id.* at p. 669.)  The court described the idea of declaring a transaction void as to some parties thereto but valid as to others "ludicrous," noting the practical difficulties it would cause.  (*Ibid.*)

The crucial difference between *Blechman* and this case is that the omitted indispensable parties there did what Weissberg has not done: collaterally attack the judgment entered in their absence and secure a new, contrary judgment.  (*Blechman, supra,* 157 Cal.App.4th at p. 668.)  We need not speculate what form such an attack might take here or what its consequences might be.  We hold only that, absent a successful attack on the judgment against Fazio, the judgment "stand[s]."  (*Doe, supra,* 82 Cal.App.5th at p. 306.)  The trial court erred in issuing a sale order that necessarily rests on a factual premise which that judgment conclusively negates.

### III.  DISPOSITION

The order directing a sale of property is reversed.  Peinado is entitled to his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


SMILEY, J.


WE CONCUR:


HUMES, P. J.

LANGHORNE WILSON, J.



A169780
*Weissberg v. Peinado*

16