Filed 6/17/16  Farthi v. JPMorgan Chase Bank CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| HAMED FATHI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>    Defendant and Respondent. | D069268<br><br><br><br>(Super. Ct. No. 37-2014-00029190-<br> CU-OR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Hamed Fathi, in pro. per., for Plaintiff and Appellant.

Bryan Cave, Aileen M. Hunter and Thomas Nanney, for Defendant and Respondent.

Plaintiff Hamed Fathi filed a preforeclosure lawsuit in federal court asserting under federal civil rights law (42 U.S.C. § 1983) that JPMorgan Chase Bank, N.A. (Chase) lacked standing to foreclose.  The federal court dismissed the lawsuit without leave to amend.  Fathi then filed this action, asserting under state law that Chase lacked

standing to foreclose and violated the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200) by inducing him to default on the loan.  Chase demurred on the basis that res judicata barred Fathi from relitigating his claims because they had already been finally adjudicated against him in the federal lawsuit.  The trial court sustained the demurrer without leave to amend and entered a judgment of dismissal.  Fathi contends the trial court erroneously applied the res judicata doctrine.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The Loan*

On October 17, 2005, Fathi obtained a $606,000 residential loan from Washington Mutual Bank, FA (Washington Mutual).  The loan was secured by a deed of trust that identifies California Reconveyance Company as the trustee.

In September 2008, the Federal Deposit Insurance Corporation (FDIC) closed Washington Mutual and appointed a receiver.  Chase later purchased certain of Washington Mutual's assets from the FDIC.

In March 2009, Quality Loan Service Corporation (Quality Loan) was substituted as the trustee under the deed of trust.  A few days later, Quality Loan recorded a notice of default indicating Fathi was over $17,000 behind on his loan.  Quality Loan recorded notices of trustee's sales in 2009, 2010, 2011, and 2012.

*The Federal Lawsuit*

In November 2013, Fathi (acting pro se) filed a complaint against Chase in federal court preemptively challenging the impending foreclosure proceedings against his home. He alleged that a variety of "shenanigans" surrounding the origin, acquisition, and

securitization of his loan violated his civil rights and constituted fraud, misrepresentation and negligence.

The federal court granted Chase's motion to dismiss on the basis there could be no civil rights violation without state action, and that the state law claims failed to specify the requisite " 'who, what, when, where, and how of the misconduct charged.' "  The court granted Fathi leave to amend.

In March 2014, Fathi filed an amended complaint in the federal lawsuit again preemptively challenging the impending foreclosure proceedings.  He asserted one claim for "wrongful foreclosure" under the federal civil rights statute (42 U.S.C. § 1983), alleging (1) Washington Mutual was not properly licensed when it issued the loan to Fathi; and (2) Washington Mutual assigned the loan to a securitizing trust before the FDIC takeover such that Washington Mutual no longer owned the loan when Chase acquired certain of Washington Mutual's assets and, thus, Chase "did not acquire the right to foreclose on the [loan]."

The federal court again granted Chase's motion to dismiss, this time without leave to amend.  The court explained Fathi still had not alleged the state action required to give rise to a civil rights violation.  Alternatively, even "assum[ing] for the sake of th[e] motion that Mr. Fathi intended to assert a wrongful-foreclosure claim and not a civil-rights claim," the court explained the claim fails for three additional reasons.  First, citing *Gomes v. Countrywide Home Loans, Inc.* (1985) 192 Cal.App.4th 1149, 1154 (*Gomes*), the court found Fathi's *preforeclosure* lawsuit was precluded by California's " 'exhaustive . . . non-judicial foreclosure statute.' "  Second, noting the then-split of

3

California authority, the court concluded Fathi, as a nonparty to the securitization agreement, lacked standing to challenge deficiencies in the securitization process. (See *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 (*Jenkins*) ["As an unrelated third party to the alleged securitization . . . , [the plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and service agreement, relating to such transactions."]; but see *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1083 [borrower "may challenge the securitized trust's chain of ownership by alleging the attempts to transfer the deed of trust to the securitized trust . . . occurred after the trust's closing date" and was, thus, "void"].) Finally, the court found Fathi had not tendered payment of the outstanding debt, which is generally a prerequisite to challenging a foreclosure proceeding. (See *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1053.)

The federal court entered a judgment of dismissal, which Fathi appealed. His appeal is still pending.

*This Lawsuit*

About one month after Fathi appealed the federal judgment, he filed his original complaint in this action. Chase demurred. The trial court ruled on Chase's demurrer, and Fathi filed an amended complaint two weeks later.[1]

Fathi's amended complaint asserts causes of action for quiet title, slander of title, cancellation of instruments, violation of the UCL, and declaratory relief. As Fathi puts it,

---

[1]    The appellate record does not include Fathi's original complaint, any of the briefing relating to the initial demurrer, or the trial court's ruling.

4

"The gravamen of the complaint challenged the foreclosure on several theories, mainly that Chase lacked standing to foreclose."

The amended complaint also alleges that Fathi inquired about a loan modification in 2009 when he was current on his loan; a Chase representative informed Fathi "that in order to qualify for a modification he must miss his payments and be at least three month[s] behind"; when Fathi relied on Chase's representation, Chase "falsely declared he had defaulted on the [loan]"; and Chase never had any intention of modifying Fathi's loan, but rather, falsely induced him into defaulting because Chase "would benefit by being paid on a Credit Default Swap (a type of insurance paid in cases of default)."

Chase demurred to Fathi's amended complaint on the basis it was barred by res judicata because the federal court had already rendered a final judgment on the same claims. In his opposition, Fathi argued res judicata did not apply because the federal judgment was still on appeal, and, in any event, his operative state court complaint "alleges new and different facts and causes of action not known to [him] when the [f]ederal [c]omplaint was filed."

On August 21, 2015, the trial court sustained Chase's demurrer on the basis of res judicata, and denied Fathi leave to amend. In response to Fathi's arguments that the state court complaint asserted new, previously unknown causes of action, the court explained:

> "To determine whether two causes of action involve the same 'cause of action' courts apply the primary rights theory. [Citation.] 'The primary right is determined by the harm suffered, regardless of the number of legal theories asserted.' [Citation.]
>
> "After comparing the allegations in Plaintiff's first amended complaint filed in the federal action with the allegations made in the

5

first amended complaint filed in the instant action, the Court concludes the two actions allege the invasion of the same primary right, i.e., the right to be free from alleged wrongful foreclosure. Thus, the instant complaint is barred by the doctrine of *res judicata*."

The court entered a judgment of dismissal.

## DISCUSSION

In his opening brief on appeal, Fathi "concedes that the [state court amended complaint]'s duplicative foreclosure challenges against failed securitization are barred by *res judicata* since they were similar to the allegations in the [federal] action." He focuses on salvaging his UCL claim by arguing it "was not sought in the [federal] action, and because it was not actually litigated and determined therein, it is not barred." As we will explain, res judicata nonetheless bars Fathi's UCL claim.

In his reply brief, Fathi backtracks on his concession regarding the non-UCL claims, arguing the California Supreme Court's "quite significant" intervening decision in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 (*Yvanova*) undermines the federal court's rationale for dismissing his original action, which, in turn, undermines the trial court's res judicata ruling. For reasons we will explain, *Yvanova* does not help Fathi.

### I.  *Relevant Legal Principles*

#### A.  *Standard of Review*

" 'On appeal from a judgment of dismissal entered after a demurrer has been sustained, this court reviews the complaint de novo to determine whether it states a cause of action. [Citation.] We assume the truth of all material facts properly pleaded, but not

6

contentions, deductions or conclusions of fact or law.' " (*Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 813 (*Saterbak*).)  "We may consider matters that are properly judicially noticed." (*Ibid.*)  We review for an abuse of discretion the trial court's denial of leave to amend.  (*Ibid.*)

"Whether the doctrine of res judicata applies in a particular case is a question of law which we review de novo." (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 228.)

### B.  *The Res Judicata Doctrine*

" 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co*. (2002) 28 Cal.4th 888, 896 (*Mycogen*).)  "Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)  "If claim preclusion is established, it operates to bar relitigation of the claim altogether." (*Ibid.*)

"To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.' " (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 (*Boeken*); see *Mycogen, supra*, 28 Cal.4th at p. 904.)  This theory " 'provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a

7

breach of that duty.' " (*Mycogen*, at p. 904.)  " 'The most salient characteristic of a primary right is that it is indivisible:  the violation of a single primary right gives rise to but a single cause of action.' "  (*Ibid*.)

" 'In California the phrase "cause of action" is often used indiscriminately . . . to mean *counts* which state [according to different legal theories] the same cause of action . . . .'  [Citation.]  But for purposes of applying the doctrine of res judicata, the phrase 'cause of action' has a more precise meaning:  The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced."  (*Boeken, supra*, 48 Cal.4th at p. 798, brackets and ellipses in original.)

"A clear and predictable res judicata doctrine promotes judicial economy.  Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date."  (*Mycogen, supra*, 28 Cal.4th at p. 897; *Federal Home Loan Bank of San Francisco v. Countrywide Financial Corp.* (2013) 214 Cal.App.4th 1520, 1527 ["Res judicata bars a cause of action that was *or could have been* litigated in a prior proceeding"], italics added; *Mycogen*, at p. 897 [" ' "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' "].)  " '. . . If the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged . . . .  The reason for this is manifest.  A party cannot by negligence or design

8

withhold issues and litigate them in consecutive actions.' " (*Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160 (*Tensor Group*).)

### C. *Fathi's Claims Regarding Chase's Standing to Foreclose*

Although Fathi initially conceded res judicata bars his non-UCL claims, he now contends the doctrine does not apply in light of the intervening decision in *Yvanova, supra*, 62 Cal.4th 919. This contention fails.

First, res judicata applies even when there has been an intervening change in law. (*Macy v. City of Fontana* (2016) 244 Cal.App.4th 1421, 1435; *Slater v. Blackwood* (1975) 15 Cal.3d 791, 796-797.) As the California Supreme Court has explained, "The consistent application of the traditional principle that final judgments, even erroneous ones [citation], are a bar to further proceedings based on the same cause of action is necessary to the well-ordered functioning of the judicial process. It should not be impaired for the benefit of particular plaintiffs, regardless of the sympathy their plight might arouse in an individual case." (*Slater*, at p. 797.) Thus, there is no legal basis for us to consider *Yvanova*'s potential impact.

Second, even if there were, *Yvanova* does not help Fathi. As the federal court explained in dismissing Fathi's lawsuit, under California's exhaustive nonjudicial foreclosure statute, a borrower may not bring a preemptive—that is, *preforeclosure*—challenge to a lender's power to foreclose. (See *Gomes, supra*, 192 Cal.App.4th at p. 1154; *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 743-744; *Jenkins, supra*, 216 Cal.App.4th at pp. 511-513, disapproved on another ground in *Yvanova, supra*, 62 Cal.4th at p. 939, fn. 13; *Saterbak, supra*, 245 Cal.App.4th at p. 815, fn. 3.) *Yvanova*

9

addressed only a borrower's *postforeclosure* ability to challenge as void (as opposed to *voidable*) documents in the foreclosing entity's chain of ownership. (*Yvanova*, at pp. 942-943; see *Saterbak*, at p. 815.) We recently observed that *Yvanova* "is expressly limited to the post-foreclosure context." (*Saterbak*, at p. 815; see *Yvanova*, at p. 934 ["This aspect of *Jenkins,* [*supra*, 216 Cal.App.4th 497] disallowing the use of a lawsuit to preempt a nonjudicial foreclosure, is not within the scope of our review, which is limited to a borrower's standing to challenge an assignment in an action seeking remedies for *wrongful foreclosure.*"].) Because Fathi brings a *preforeclosure* challenge to Chase's standing to foreclose, *Yvanova* is of no assistance to him. (See *Saterbak*, at p. 815.)

### D. *Fathi's UCL Claim*

Fathi argues res judicata does not apply to his UCL claim because he did not assert such a claim in the federal case; he asserted only a civil rights claim under 42 United States Code section 1983. He also argues he "was within his rights to not bring the UCL claim into federal court" because of the different standing requirements in state and federal courts. Neither argument has merit.

First, as noted, it is irrelevant to a res judicata analysis whether Fathi labeled his claims identically; the relevant analysis is whether his claims seek redress for an invasion of the same primary right. (*Boeken, supra*, 48 Cal.4th at pp. 798 ["The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced."].) This standard is met here. The federal lawsuit challenged Chase's standing to foreclose on Fathi's loan in light of Washington Mutual's allegedly defective licensure and deficient securitization of the

10

loan. We agree with the trial court's assessment that the primary right invaded by this alleged conduct is "the right to be free from alleged wrongful foreclosure."

Fathi's UCL claim alleges an invasion of this same primary right. Indeed, according to Fathi's allegations, were it not for Chase's allegedly unfair competition—inducing him to default on his otherwise-current loan as a prerequisite to being considered for a loan modification—Chase would not have been able to commence the allegedly wrongful foreclosure proceedings. Thus, the basis of Fathi's UCL claim "was within the scope of," "related to," and "relevant to" the claims asserted in the federal lawsuit "so that it *could* have been raised" in that case. (*Tensor Group, supra*, 14 Cal.App.4th at p. 160.) It is no defense that the claim was not actually raised. Accordingly, res judicata bars Fathi's UCL claim.

Second, Fathi misplaces his reliance on *Lee v. American Nat. Ins. Co.* (9th Cir. 2001) 260 F.3d 997 to support the proposition that he was precluded from bringing his UCL claim in the federal lawsuit because the "case or controversy" requirement imposed by Article III of the federal Constitution imposes a more stringent standing requirement than does the UCL. (*Lee*, at pp. 1001-1002 [plaintiff had not "actually been injured" for purposes of Article III standing where he never purchased certain of the insurance policies he contended violated the UCL].) *Lee* was decided three years before the California electorate " 'substantially revised the UCL's standing requirement; where once private suits could be brought by "any person acting for the interests of itself, its members or the general public" [citation], now private standing is limited to any "person who has suffered injury in fact and has lost money or property" as a result of unfair

11

competition.' [Citations.]" (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320-321; Bus. & Prof. Code, § 17204.)  Fathi makes no attempt to explain how the late fees and derogatory credit reporting that he claims satisfy the UCL's new standing requirements do not also satisfy Article III's requirements.  Indeed, to the contrary, *Rubio v. Capital One Bank* (9th Cir. 2010) 613 F.3d 1195, which Fathi cites to support his assertion that these injuries convey standing under the UCL, *also found that these injuries convey standing under Article III*.  (*Id.* at pp. 1203-1204.)  Consequently, we are not persuaded that Fathi was unable to assert his UCL claim in the federal lawsuit.

E.  <em>Denial of Leave to Amend</em>

Because res judicata bars relitigation of Fathi's claims, we find no abuse of discretion in the trial court's denial of leave to amend.

DISPOSITION

The judgment is affirmed.  Chase is entitled to its costs on appeal.

HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.

12