Filed 8/19/16  Chau v. Citibank CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PAUL CHAU,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITIBANK, N.A., as Successor Trustee, etc., et al.<br><br>    Defendants and Respondents. | D068425<br><br><br>(Super. Ct. No. 37-2012-00098482-CU-FR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine Bacal, Judge.  Affirmed.

Law Offices of Elliott N. Kanter and Elliott N. Kanter for Plaintiff and Appellant.

Houser & Allison, Eric D. Houser and Gabriel Ozel for Defendants and Respondents.

Paul Chau sued Citibank, N.A., and several other defendants after Citibank, as successor trustee of an investment trust, foreclosed on Chau's home and purchased the

property at the foreclosure sale.  Chau sought damages and to invalidate the foreclosure sale.  Citibank and two other defendants successfully moved for summary judgment.

On appeal, Chau focuses on his claims that (1) Citibank had no legal authority to initiate the foreclosure sale because Citibank allegedly obtained ownership of the secured loan through a void and fraudulent transfer document; and (2) defendants committed fraud because the transfer document allegedly contained false signatures.  We determine the moving defendants met their burden to present competent evidence showing Chau could not prevail on these claims.  As Chau did not present any contrary evidence on these issues, the court properly granted summary judgment.

RELEVANT FACTS AND PROCEDURE

On March 1, 2007, Chau executed a promissory note (Note) promising to repay a $750,000 refinancing loan from UBS Home Finance (UBS).  The Note was secured by a deed of trust (Deed of Trust) on Chau's home (Property).  The Deed of Trust identified Mortgage Electronic Registration Systems, Inc. (MERS) as a "beneficiary of this Security Instrument (solely as nominee for Lender and Lender's successors and assigns) . . . ."

Six weeks later, UBS sent Chau a revised note (Revised Note) stating there were errors in the loan documents and the Revised Note reflected the parties' actual agreement, and asked that Chau sign the document.  Chau refused to sign the Revised Note and unsuccessfully sought to rescind the loan agreement based on the requested modification.

The next month, Chau was in a vehicle accident and was severely injured.  During the next 18 months, Chau was frequently in default on the loan.  At the time, HomeEq

2

Servicing was the loan servicer. Although Chau made some payments in 2009, he made no payments after September 2009.

In January 2010, a Notice of Default was recorded, stating Chau owed $16,590.85 on the loan, and Chau must pay this amount or his home would be sold in a nonjudicial foreclosure sale.

Eight months later, in August 2010, Ocwen Loan Servicing, LLC (Ocwen) became the new loan servicer on the Note. In response, Chau requested a loan modification, but Ocwen refused to agree to the modification.

Two months later, on October 21, 2010, MERS (as nominee for the Deed of Trust beneficiary) executed a written document entitled Assignment of Deed of Trust (hereafter referred to as the October 2010 Assignment). In this document, MERS transferred the Note and Deed of Trust to U.S. Bank, N.A., as trustee for the Master Adjustable Rate Mortgages Trust 2007-HF2 Mortgage Pass-Through Certificates, Series 2007-HF2 (Mortgage Trust). The transfer document was initialed by Christina Carter, identified as a MERS vice-president, and the signature was notarized by Leticia Arias, a Florida notary public.

About one month later, on November 22, a Substitution of Trustee was recorded, substituting Quality Loan Service Corporation (Quality) for the original trustee on the Deed of Trust. The document was initialed by Christina Carter, as an employee of Ocwen. The document was notarized by Lauren Martin, a Florida notary public.

About one week later, on November 30, a Notice of Trustee's Sale was recorded. After postponements, a foreclosure sale was held on March 17, 2011. The purchasing

3

party was Citibank, as "Successor Trustee" to U.S. Bank, trustee of the Mortgage Trust. One week later, a Trustee's Deed Upon Sale (Trustee's Deed) was recorded showing Citibank as the purchasing party.

In June 2012, Chau filed a complaint against Citibank, as successor trustee of the Mortgage Trust, alleging a single cause of action (fraud).

Two months later, in August 2012, Citibank transferred title of the Property to third parties.

Chau later filed a second amended complaint, adding several parties and causes of action. In addition to Citibank, the parties were: Ocwen (the loan servicer), Quality (the successor trustee on the Deed of Trust), MERS, and U.S. Bank (the prior trustee for the Mortgage Trust). The causes of action were: (1) constructive fraud; (2) fraudulent conveyance; (3) wrongful foreclosure; (4) cancellation of written instruments; (5) violation of the unfair competition law (Bus. & Prof. Code, § 17200); (6) violation of the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.); (7) violation of the California Homeowner Bill of Rights (Civ. Code, § 2920.5 et seq.); (8) quiet title; and (9) breach of oral contract.

In these causes of action, Chau alleged the foreclosure was wrongful and defendants committed fraud because the foreclosure sale was initiated by an entity that was not a valid owner of the Note or Deed of Trust. Specifically, Chau alleged the October 2010 Assignment occurred after the closing date of the Mortgage Trust (allegedly July 31, 2007) and the October 2010 Assignment contained false and perjured signatures of "robo-signers" (Christina Carter and Leticia Arias). Chau also alleged the

4

foreclosure was improper because he had rescinded the loan when he refused to sign the Revised Note; he was falsely promised a loan modification; and defendants engaged in bad faith tactics in attempting to collect on the loan.

Three of the defendants—Citibank (as successor trustee for the Mortgage Trust), MERS, and Ocwen—moved for summary judgment. Regarding Chau's challenge to the foreclosure sale, they contended: (1) Chau lacked standing to challenge the securitization of the Note (relying on then-existing law); (2) the undisputed facts show the October 2010 Assignment (from UBS/MERS to U.S. Bank, as trustee for the Mortgage Trust) was legally valid because it reaffirmed an earlier transfer that occurred in July 2007; and (3) the undisputed facts show the transfer documents were genuine and the signatures were not false or forged. As detailed below, defendants presented documents supporting these assertions.

In opposing the summary judgment motion, Chau did not present any contrary evidence on these issues. Chau instead challenged the admissibility of defendants' evidence, arguing the documents were not properly authenticated, lacked foundation, and constituted hearsay.

After considering the papers and conducting a hearing, the court overruled Chau's evidentiary objections to the recorded documents (many of which had been attached to Chau's initial complaint), but sustained Chau's foundation/authentication objections to various other documents, including correspondence from the prior loan servicer. Relying on the documents found admissible, the court concluded the moving defendants met their summary judgment burden on each of the causes of action, and Chau did not proffer

5

evidence raising a material factual issue on any of the claims. The court thus entered judgment in the moving defendants' favor.

DISCUSSION

I. *Summary Judgment Standards*

A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion" under the applicable proof standard. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

The issues on a summary judgment motion are framed by the pleadings. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) A moving defendant has the initial burden to show one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to the claim. (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 444.) If the defendant meets this burden, the burden shifts to the plaintiff to show the existence of a triable issue. (*Ibid.*) The plaintiff may not rely upon the pleading allegations but instead must set forth *specific facts* based on *admissible evidence* showing a triable issue of material fact on the cause of action. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477; *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 635.)

"Because a summary judgment denies the adversary party a trial, [the motion] should be granted with caution." (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th

6

1293, 1305.) We consider all of the evidence and inferences reasonably drawn from the evidence in the light most favorable to the opposing party. (*Aguilar, supra*, 25 Cal.4th at p. 843.) We review a summary judgment de novo and are not bound by the trial court's stated reasons. (*Blue Shield of California Life & Health Ins. Co. v. Superior Court* (2011) 192 Cal.App.4th 727, 732.)

II. *Chau Forfeited His Appellate Challenges by Violating Numerous Appellate Rules*

It is a fundamental tenet of appellate law that the lower court's judgment is presumed to be correct. As the party seeking reversal, it is the appellant's burden to overcome the presumption of correctness and show prejudicial error. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.)

Chau did not meet this burden because he failed to comply with rules ensuring both parties receive a fair and complete appellate review. Most important, Chau violated the rule that an appellant's brief must provide "a summary of significant facts" relevant to the appellate issues raised in the case. (Cal. Rules of Court, rule 8.204(a)(2)(C).) In his appellate brief, Chau made no effort to identify or describe the evidence presented in the summary judgment proceeding. Instead he discussed only the allegations of his pleading. A summary judgment motion triggers a procedure in which the parties *pierce the pleadings* to determine whether there are disputed facts and thus whether a trial is necessary to resolve the dispute. (*Jordan v. City of Sacramento* (2007) 148 Cal.App.4th 1487, 1492.) The allegations by themselves have no meaning in conducting this analysis. A court must view the allegations *and* the facts presented by the parties to determine

7

whether summary judgment is warranted. By failing to describe the facts proffered in the summary judgment proceeding, Chau has not provided us with the necessary information to evaluate whether the trial court properly granted defendants' summary judgment motion.

This rule violation was compounded by Chau's numerous misstatements of the record. Chau repeatedly asserts as facts information that was merely *alleged* in his prior complaints. These allegations do not constitute evidence that may be considered in ruling on a summary judgment motion. It is "fundamental that to defeat summary judgment a plaintiff must show 'specific facts' and cannot rely on allegations of the complaint" (*Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040, 1054), even when the allegations are verified (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 426).

Chau also makes numerous factual assertions without providing any record citation. Statements of fact not supported by citations to the record are improper and cannot be considered. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632.) "It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations." (*Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205.) "If a party fails to support an argument with the necessary citations to the record, . . . the argument [may] deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

Additionally, it is the appellant's burden to provide a record sufficient to determine whether the asserted errors are meritorious.  (See *Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039; *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 136.)  Chau violated this fundamental rule.  The evidence presented by defendants was contained in 541 pages of lodged exhibits.  Chau made no effort to designate these exhibits to be part of the appellate record.  Without reviewing these documents, there is no principled basis upon which we can evaluate Chau's contention that the court erred in granting summary judgment.

### III.  *Analysis of Chau's Appellate Arguments*

Despite Chau's failure to comply with numerous important appellate rules, in the interests of justice we have considered the merits of Chau's appellate assertions.  Our review is limited to the specific contentions raised by Chau in his appellate brief.  (See *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41 (*Frittelli*); *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126.)  These contentions concern the court's granting summary judgment on Chau's wrongful foreclosure and fraudulent conveyance causes of action.  In reviewing Chau's arguments on these claims, we have independently examined the entire appellate record and augmented the record (on our own motion) with defendants' lodged exhibits.  Based on our review of this entire record, we determine Chau's appellate arguments are without merit.

9

A.  *Wrongful Foreclosure Cause of Action*

1.  *General Legal Principles*

Generally, the elements of a wrongful foreclosure cause of action are:  " '(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.'. . ."  (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408.)

With respect to the first element, a "foreclosure initiated by one with no authority to do so is wrongful for purposes of such an action.  [Citations.]  [O]nly the original beneficiary, its assignee or an agent of one of these has the authority to instruct the trustee to initiate and complete a nonjudicial foreclosure sale."  (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 929 (*Yvanova*).)

In *Yvanova,* the California Supreme Court recently considered the issue whether a borrower has standing to challenge a completed nonjudicial foreclosure on the ground the foreclosing party was not a valid assignee of the original lender.  (*Yvanova, supra*, 62 Cal.4th at pp. 929-943.)  The court held a borrower does have standing to challenge an assignment of the note and deed of trust on the basis the assignment was void (as opposed to voidable).  (*Id.* at p. 943.)  In so holding, the high court disapproved a line of Court of Appeal decisions concluding a buyer has no standing even if the loan transfer was void.  (*Id.* at p. 939, fn. 13.)

10

The *Yvanova* plaintiff's wrongful foreclosure claim was based on an allegation that the foreclosing entity (the trustee of an investment trust) had no legal authority to foreclose because the loan's transfer into the investment trust occurred several years after the trust's closing date (the date on which all loans and mortgages or trust deeds must be transferred to the investment pool). (*Yvanova, supra*, 62 Cal.4th at p. 925.) Although the *Yvanova* court held a plaintiff has standing to challenge this transfer if the transfer was void, the court declined to reach the issue whether the particular transfer was void or voidable, and remanded the matter for further consideration of this issue. (*Id.* at pp. 942-943.)

Our court has since held that where the closing date of an investment trust is contained in a pooling agreement governed by New York law, the fact the transfer occurred after the closing date is a voidable and not a void transaction. (*Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 815 (*Saterbak*).) We have also concluded that tender is not generally required to challenge a void transfer, an issue left open in *Yvanova*. (*Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 565, fn. 10; see *Yvanova, supra*, 62 Cal.4th at p. 929, fn. 4.)

2. *Analysis of Chau's Wrongful Foreclosure Claim*

In his second amended complaint, Chau alleged the Note and Deed of Trust were never properly transferred into the Mortgage Trust and thus Citibank was not the legal owner entitled to foreclose.

In moving for summary judgment, Citibank contended it had the legal authority to foreclose based on its claims that (1) it was the successor trustee of the Mortgage Trust;

11

and (2) at the time of the foreclosure sale the Mortgage Trust held the Note and Deed of Trust because these documents had been transferred into the Mortgage Trust in July 2007 and/or in October 2010 through the October 2010 Assignment document.

To support these claims, defendants presented the declaration of Katherine Ortwerth, an Ocwen Financial Corporation analyst, who stated she had personal knowledge of the facts stated in her declaration, and had access to the relevant business records in Ocwen's custody and control.  She said that on July 1, 2007, "[Chau's] Loan was transferred and deposited into a Trust held by U.S. Bank. . . .  The Loan was one of thousands of loans transferred into the [Mortgage Trust] pursuant to (and in compliance with) the Pooling and Servicing Agreement dated as of July 1, 2007. . . .  Citibank, N.A. is the successor trustee to the U.S. Bank . . . as Trustee of the [Mortgage Trust]."[1] Ortwerth attached a copy of portions of the Pooling and Servicing Agreement (PSA) and the accompanying mortgage loan schedule.

Ortwerth also confirmed the October 2010 Assignment.  She said that "On October 21, 2010, an Assignment of the Deed of Trust to U.S. Bank . . . as Trustee for the [Mortgage Trust] . . . was executed on behalf of MERS, the beneficiary of the Loan, which evidenced the prior transfer of the Loan into the Trust."  Ortwerth attached a copy of this written assignment, which states:

> "This ASSIGNMENT OF DEED OF TRUST is made and entered into as of the 1st day of SEPTEMBER, 2010, from [MERS], as

---

[1]     Chau objected to this statement on various grounds (including hearsay and lack of foundation), but the court overruled the objections.  On appeal, Chau does not claim error with respect to this ruling.  Thus, for purposes of this opinion, we assume the admissibility of Ortwerth's statement.  (See *Frittelli, supra*, 202 Cal.App.4th at p. 41.)

12

nominee for UBS . . . its successors and assigns, ('Assignor') to U.S. BANK . . . [as trustee for the Mortgage Trust and its successors and assigns] all its rights, title and interest in and to [the Note and Deed of Trust] . . . ."

This document was signed by Christine Carter (using only her initials "CC"), who was identified on the document as a MERS "Vice President."  Carter's signature was notarized by Leticia Arias on October 21, 2010.  The document contains a stamp showing that Arias is a Florida notary public, and identifies her notary commission number and the expiration date (November 9, 2011).

Defendants also produced the declaration of Leticia Arias, who said she is employed by the parent company of Ocwen.  She stated "under penalty of perjury" that "On October 21, 2010, I personally saw Christina Carter, Vice President of [MERS] (per a prior MERS Corporate Resolution) sign [the October 2010 Assignment].  I notarized Ms. Carter's signature on the Assignment. . . ."  Arias attached a copy of the October 2010 Assignment, and confirmed this document "contains my signature and my notary public seal at the time."

In opposing the summary judgment, Chau did not present any affirmative evidence on the issue of the validity or legality of the transfer of the Note and Deed of Trust into the Mortgage Trust, nor did he present any contrary evidence on the validity of the October 2010 Assignment signatures.  He instead argued the October 2010 Assignment was void on its face because it was beyond the closing date of the PSA.[2]  Chau also

---

2      Although Chau alleged the trust's closing date was July 31, 2007, in his opposition papers he identified October 1, 2007 as the closing date.  The documentary evidence before us does not appear to specify the precise closing date of the Mortgage Trust.

challenged the admissibility of defendants' documents. The court overruled these objections with respect to the recorded documents, including the October 2010 Assignment. On appeal, Chau does not contend the court erred in overruling these evidentiary objections.

On this record, we conclude defendants met their burden to show the Note and Deed of Trust were transferred into the Mortgage Trust on July 1, 2007. Ortwerth's statement that the transfer occurred on July 1, 2007 was sufficient to establish this fact. The court overruled Chau's challenges to Ortwerth's competency to testify about this fact, and Chau does not challenge the court's ruling on appeal. We are thus bound by the ruling. (See *Frittelli, supra,* 202 Cal.App.4th at p. 41.)

Further, even assuming Ortwerth's statement was insufficient to show the 2007 transfer, the October 2010 Assignment document defeats a wrongful foreclosure cause of action. "*Yvanova* recognizes borrower standing only where the defect in the assignment renders the assignment *void*, rather than *voidable*," and this court has held that under New York law, an untimely assignment to a securitized trust made after the trust's closing date is merely voidable.[3] (*Saterbak, supra*, 245 Cal.App.4th at p. 815.) Although the record before us is unclear whether the PSA is governed by New York law (only portions of the PSA were submitted into evidence), once defendants met their burden to show Citibank

---

[3] In *Saterbak*, we recognized a contrary holding by *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, but declined to follow *Glaski,* noting the New York case upon which *Glaski* relied on this point has been overruled. (See *Saterbak, supra*, 245 Cal.App.4th at p. 815, fn. 5.)

14

was a legal owner of the Note and Deed of Trust, it was Chau's burden to show a triable issue of fact on the issue. Chau did not meet this burden.

We conclude the undisputed evidence showed the Note and Deed of Trust were transferred into the Mortgage Trust by the Mortgage Trust's closing date (claimed to be July 31, 2007 or October 1, 2007). Alternatively, because the challenged October 2010 Assignment was a voidable (not void) transaction, Chau has no legal standing to challenge the securitization of the loan based on a late transfer of the loan or late recording of the document.

Chau alternatively contends the foreclosure was wrongful because the October 2010 Assignment was fraudulent as it contained false signatures.

In moving for summary judgment, defendants produced the declaration of notary Leticia Arias. As stated above, Arias confirmed she "personally saw Christina Carter, Vice President of [MERS] (per a prior MERS Corporate Resolution) sign [the October 2010 Assignment]" and that she notarized this document. Defendants also produced a document entitled Corporate Resolution which states Ocwen is a MERS "Member," and certain designated Ocwen employees are appointed as officers of MERS. The resolution specifically appoints Christina Carter as a MERS officer authorized to take actions on behalf of MERS.[4]

This evidence met defendants' burden to show the signatures were genuine and that Carter had the authority to sign the document. In opposing the summary judgment

---

[4] The court overruled Chau's objections to this document, and Chau does not challenge this ruling on appeal. We are thus bound by the court's ruling. (See *Frittelli, supra*, 202 Cal.App.4th at p. 41.)

15

motion, Chau did not produce any evidence creating a triable issue of fact on the issue of the validity of the signatures, nor did Chau assert any meritorious evidentiary objections to Arias's declaration. Accordingly, the court properly found Chau's fraud theory underlying his wrongful foreclosure claim to be unsupported for purposes of the summary judgment.

We are aware that Chau also challenged the validity of the Substitution of Trustee document based on claimed fraudulent signatures as part of his wrongful foreclosure claim. However, Chau does not raise any issues regarding the Substitution document on appeal. Thus, he forfeited his right to assert any claim on this theory. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

Further, we have reviewed the recorded Substitution of Trustee appointing Quality as trustee, and find the document does not create a triable issue of fact on any of Chau's claims. Civil Code section 2934a, subdivision (d) states: "A trustee named in a recorded substitution of trustee shall be deemed to be authorized to act as the trustee under the mortgage or deed of trust for all purposes from the date the substitution is executed by the mortgagee, beneficiaries, or by their authorized agents. . . . Once recorded, the substitution shall constitute *conclusive* evidence of the authority of the substituted trustee or his or her agents to act pursuant to this section." (Italics added.)

Under this code section, once the substitution of trustee was recorded, Quality was the authorized trustee to notice and conduct the sale as a matter of law. (See *Dimock v. Emerald Properties* (2000) 81 Cal.App.4th 868, 871.) Additionally, a party does not have standing to challenge a trustee substitution on a deed of trust unless he or she can

16

show prejudice. (See *U.S. Hertz, Inc. v. Niobrara Farms* (1974) 41 Cal.App.3d 68, 85.) Unlike a borrower's right to have only the current owner (or its agent) enforce the rights under the deed of trust, a borrower's "rights are in no manner affected" by any procedural irregularities underlying a *recorded* substitution of the trustee on a deed of trust. (*Ibid.*) Regardless whether the correct person signed the substitution form, Quality's appointment to serve as trustee could be ratified by the party with the authority to substitute the trustee (e.g., MERS or Ocwen or U.S. Bank). Moreover, Chau did not produce any evidence showing Carter lacked authorization to sign the Substitution of Trustee document and/or had the intent to defraud the borrowers or the Note holder.

## B. *Fraudulent Conveyance Cause of Action*

Chau contends the court erred in granting summary judgment on his fraudulent conveyance claim because the signatures of Carter and Arias on the 2010 Assignment document were fraudulent. As explained above, defendants met their burden to show the signatures were genuine, and Chau did not present any contrary evidence. Thus, there was no error in sustaining the demurrer on this cause of action.

## C. *Remaining Causes of Action*

In the final two pages of his appellate brief, Chau asserts the court erred in granting summary judgment on the remaining claims. He acknowledges, however, that these causes of action were based on "the fraud and wrongful foreclosure causes of action." He contends that because the court erred in granting summary judgment on these two causes of action, "[t]he same logic applies" to his additional claims.

17

Because we have rejected Chau's contentions on his fraud and wrongful foreclosure causes of action, we necessarily reject his similar assertions on his remaining claims.

During oral argument, Chau's counsel claimed the court erred in granting summary judgment because there was a triable issue of fact regarding the loan terms, noting that Chau never signed the proposed Revised Note in 2007.  However, Chau did not raise this argument in his written appellate briefing.  Thus, he forfeited his right to assert the argument on appeal.  (See *Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1336, fn. 2.)

## DISPOSITION

Judgment affirmed.  Appellant to bear respondents' costs on appeal.

HALLER, Acting P.J.

WE CONCUR:

O'ROURKE, J.

PRAGER, J.*

---

\*     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.