Filed 6/30/21  Courtois v. Mortgage Electronic Registration Systems CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| KRISTI COURTOIS,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,<br><br>      Defendant and Respondent. | D078198<br><br><br>(Super. Ct. No. 37-2017-00010745-CU-OR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Law Offices of Ronald H. Freshman and Ronald H. Freshman for Plaintiff and Appellant.

Akerman LLP, Justin D. Balser and Lauren R. Lee for Defendant and Respondent.

Kristi Courtois sued several financial institutions, alleging they were threatening to pursue a nonjudicial foreclosure proceeding they lacked authority to pursue.  The trial court granted judgment on the pleadings to

defendant Mortgage Electronic Registration Systems, Inc. (MERS) on the grounds Courtois's lawsuit was an impermissible preemptive challenge to a nonjudicial foreclosure, and that she failed to allege facts establishing MERS lacked assignment authority. Well-settled authority supports the trial court's rulings in these regards. In addition, our de novo review of Courtois's operative complaint further reveals her claims are time-barred. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Loan

In April 2006, Courtois borrowed $215,200 from Countrywide Home Loans, Inc. (Countrywide) to purchase property in Carlsbad (the Property). She secured the loan against the Property, as evidenced by a deed of trust recorded with the county recorder's office on April 20, 2006.

The deed of trust identified MERS as the beneficiary under the instrument.[1] The deed of trust specified that MERS's role as beneficiary is "solely as nominee for Lender and Lender's successors and assigns . . . and

---

[1] The following description of MERS from caselaw is consistent with Courtois's description of MERS in her pleadings: "MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records. [Citation.] [¶] Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust. [Citation.] Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 267.)

2

the successors and assigns for MERS." Courtois acknowledged in the deed of trust that she "understands and agrees that MERS," as "nominee for Lender and Lender's successors and assigns," may "exercise . . . the right to foreclose and sell the Property."

In September 2011, MERS publicly recorded an assignment of deed of trust (the First Assignment) assigning all beneficial interest under the deed of trust to Bank of America as "successor by merger" to Countrywide.

In May 2012, Bank of America publicly recorded an assignment of deed of trust (the Second Assignment) assigning all beneficial interest under the deed of trust to Deutsche Bank National Trust Company (Deutsche Bank), as trustee for holders of the GSAA Home Equity Trust 2006-11 Asset-backed Certificates Series 2006-11.

The same day the Second Assignment was recorded, on May 31, 2012, Recontrust Company (Recontrust), as agent for "the present beneficiary" of the deed of trust, publicly recorded a notice of default and election to sell under deed of trust (First Default Notice). This notice stated Courtois was nearly $40,000 in arrears on her loan, and advised her that the Property could be sold at a foreclosure sale "without any court action" (capitalization and bolding omitted) unless she brought the loan current. The notice instructed Courtois to contact Deutsche Bank "[t]o find out the amount [she] must pay . . . to stop the foreclosure."

In September 2012 and May 2013, Recontrust publicly recorded notices of trustee's sales.

In December 2016, a second notice of default and election to sell under deed of trust (Second Default Notice) was publicly recorded, indicating Courtois was more than $100,000 in arrears on her loan. The notice identified NBS Default Services, LLC (NBS) as trustee for "the present

3

beneficiary," and Nationstar Mortgage, LLC (Nationstar) as the "loan servicer."

In March 2017, NBS, as trustee, publicly recorded a second notice of trustee's sale.

In December 2018, a new trustee, Affinia Default Services, LLC, publicly recorded a notice of recission of the Second Default Notice.

**The Lawsuit**

*Original Complaint*

In March 2017, Courtois filed a verified complaint against Bank of America (as "successor in interest" to Countrywide), Recontrust, Deutsche Bank, Nationstar, and Goldman Sachs Mortgage Corporation (Goldman Sachs Mortgage). The complaint did not name MERS.

Courtois alleged that "parties without right or authority are threatening nonjudicial foreclosure if she refuses to pay them, even though [they] are not valid, legal owners of the debt." She asserted they were not the valid owners of the debt because the chain of title through which they all claimed an interest in her deed of trust flowed through the First Assignment from MERS to Bank of America, which she claimed was invalid.

Specifically, Courtois alleged that before she took the loan, Countrywide had already agreed with Goldman Sachs Mortgage that the loan would be sold to a related Goldman Sachs entity (Goldman Sachs Mortgage Securities) and securitized through a real estate mortgage investment trust. The sale to Goldman Sachs Mortgage Securities allegedly occurred in June 2006. Courtois alleged that neither Goldman Sachs Mortgage Securities nor the securitization trust had any membership relationship with MERS, such that MERS "held no legal right to act as the 'beneficiary solely as nominee' in executing the [First] [A]ssignment" to Bank of America in 2011.

4

By extension, Courtois alleged that because "the [Second Assignment] relies upon the authority of [the First Assignment]," Bank of America lacked authority to assign the deed of trust to Deutsche Bank in 2012, when the first round of nonjudicial foreclosure proceedings began.

*First Amended Complaint*

In January 2019, Courtois moved for leave to amend her complaint to add MERS as a defendant. She explained in the motion that third-party discovery obtained from MERS showed that MERS had no interest in the deed of trust to assign in 2011 because the loan had already been sold to Goldman Sachs Mortgage Securities, which was not a member of MERS; thus, MERS "held [no] right to transfer interest in the deed of trust to any entity." Based on MERS's alleged lack of any interest to assign, Courtois argued MERS's act of recording the First Assignment created "a cloud on title" subject to cancelation, and giving rise to claims for slander of title and violation of the unfair competition law (Bus. & Prof. Code, § 17200; the UCL). The trial court granted Courtois leave to amend her complaint to add these claims.

In February 2019, Courtois filed her first amended complaint asserting the aforementioned claims and seeking declaratory relief. In support, she alleged Countrywide sold her loan to Goldman Sachs Mortgage Securities in June 2006, and that "MERS held no agency agreement, termed as a membership or otherwise, with [Goldman Sachs] Mortgage Securities," such that MERS "ceased being the beneficiary [of the deed of trust], solely as nominee, upon transfer of the debt and Note." Thus, "MERS was without authority or legal right to execute and record the [First] [A]ssignment" five years later in 2011.

Each of Courtois's causes of actions against MERS was based on this alleged lack of authority.

Courtois alleged her claims against MERS—all based on MERS's conduct in 2011—were not time-barred because (1) the "delayed discovery rule" tolled the statute of limitations until she learned through third-party discovery that MERS held no interest in her loan in 2011 when MERS purported to assign it, and (2) the lingering threat of foreclosure proceedings constituted "an ongoing harm."

## MERS's Motion for Judgment on the Pleadings

MERS moved for judgment on the pleadings on the following grounds: (1) Courtois could not preemptively challenge a nonjudicial foreclosure; (2) Courtois could not validly allege that MERS lacked assignment authority; (3) Courtois's claims were time-barred; and (4) each claim failed on its individual merits.

Courtois opposed MERS's motion on each ground.

The trial court granted MERS's motion on the grounds Courtois's claims were an improper preemptive challenge to a nonjudicial foreclosure, and that she failed to allege facts establishing MERS lacked assignment authority. The court did not reach MERS's statute of limitations defense, or the merits of the individual claims. The court denied Courtois leave to amend.

## Judgment

After denying a motion for new trial in which Courtois essentially reargued the motion for judgment on the pleadings, the trial court entered a judgment of dismissal in MERS's favor.

6

# DISCUSSION

## I. Standard of Review

" 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action' " (*People ex rel. Harris v. Pac Anchor Transp., Inc.* (2014) 59 Cal.4th 772, 777), or shows "on its face [it] is barred by the statute of limitations" (*Hunt v. County of Shasta* (1990) 225 Cal.App.3d 432, 440; see *SLPR, L.L.C. v. San Diego Unified Port District* (2020) 49 Cal.App.5th 284, 316 (*SLPR*)). " 'A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' " (*Pac Anchor Transp., Inc.,* at p. 777.) " 'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law . . . .' " (*Ibid.*) We may consider judicially noticeable matters. (*Ibid.*)

"We review a court's denial of leave to amend a complaint on sustaining a demurrer for abuse of discretion." (*SLPR*, *supra*, 49 Cal.App.5th at p. 317; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando*, at p. 1081; see *SLPR*, at p. 317.)

## II. Failure to State a Valid Claim for Relief

All of Courtois's claims against MERS arise from the allegation MERS lacked authority to execute the First Assignment in 2011 because Countrywide sold Courtois's loan in 2006 to a Goldman Sachs entity that was not a member of MERS's network. The trial court properly granted MERS's motion for judgment on the pleadings because the courts have routinely rejected preemptive preforeclosure challenges, and have specifically rejected the challenge Courtois raises as to MERS's assignment authority.

7

In *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808 (*Saterbak*), the plaintiff argued "she may bring a preemptive action to determine whether the [foreclosing entity] may initiate a nonjudicial foreclosure" because " '[i]f the alleged "Lender" is not the true "Lender," ' it 'has no right to order a foreclosure sale.' " (*Id.* at p. 814.)  Our court rejected the claim, noting "California courts do not allow such preemptive suits because they 'would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature.' " (*Ibid.*; see *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 [our court holding that the plaintiff's preforeclosure challenge to MERS's authority to initiate a nonjudicial foreclosure proceeding was an impermissible "attempt[ ] to interject the courts into th[e] comprehensive nonjudicial scheme"].)

Our court in *Saterbak* recognized that the Supreme Court in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919 (*Yvanova*) had recently held that similar challenges were permissible under certain circumstances. (*Saterbak*, *supra*, 245 Cal.App.4th at p. 815.)  But those circumstances require that the challenge be asserted *post*foreclosure (rather than *pre*foreclosure), and be based on a claim that the assignment to the foreclosing entity is void (rather than merely voidable).  (*Ibid.*; see *Perez v. Mortgage Electronic Registration Systems, Inc.* (9th Cir. 2020) 959 F.3d 334, 340 (*Perez*) ["[W]e follow the decisions of the California appellate courts in holding that California law does not permit preemptive actions to challenge a party's authority to pursue foreclosure before a foreclosure has taken place."].)

The courts have applied *Saterbak*'s reasoning to bar a variety of causes of action typically asserted in preemptive preforeclosure lawsuits challenging

8

a foreclosing entity's authority. (See *Perez, supra*, 959 F.3d at p. 340 [cancellation of instruments]; *Williams v. Bank of America, N.A.* (9th Cir. 2017) 701 Fed.Appx. 626, 628 ["A borrower cannot assert a California-law claim for cancellation of instruments in a preemptive pre-foreclosure action."];[2] *Ruegsegger v. Caliber Home Loans, Inc.* (C.D. Cal., Apr. 30, 2018, No. SA CV 17-0907-DOC (KESx)) 2018 WL 5993857, at \*20 ["The Court finds that Plaintiffs' Slander of Title . . . [and other] claims are all predicated on Plaintiffs' argument that was rejected in *Saterbak* . . . ."]; *Asare-Antwi v. Wells Fargo Bank, N.A.* (9th Cir., May 14, 2021, No. 19-56383) 2021 WL 1944382, at \*1 ["The district court did not err in dismissing [plaintiff]'s claims for declaratory judgment and slander of title" because "California law does not permit preemptive pre-foreclosure actions that challenge authority to foreclose."].)

Courtois alleged in the first substantive paragraph of her first amended complaint that she is "bring[ing] this complaint . . . on the basis that parties without right or authority are threatening nonjudicial foreclosure if she refuses to pay them, even though [they] are not valid, legal owners of the debt." This brings her claims squarely within the scope of *Saterbak*'s prohibition on preemptive preforeclosure challenges. Accordingly, the trial court properly granted MERS's motion for judgment on the pleadings on this basis. Further, the court acted within its discretion in denying Courtois leave to amend.

Additionally, courts have repeatedly rejected preemptive preforeclosure lawsuits specifically challenging MERS's authority to assign deeds of trust.

---

[2] We may cite and rely on unpublished federal court decisions as persuasive authority. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 64.)

9

The California Court of Appeal rejected a similar challenge in *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, explaining: "Plaintiffs argue MERS lacked authority to assign the [deed of trust] to [a third lender] because [the FDIC and an intervening second lender], the successors and assigns of the original lender, . . . did not have an agency agreement with MERS. But this does not necessarily defeat the foreclosure sale because plaintiffs agreed in the [deed of trust] that MERS had the right to exercise all rights of the lender, including foreclosing on and selling plaintiffs' property." (*Id.* at p. 1505, disapproved of on another ground by *Yvanova*, *supra*, 62 Cal.4th at p. 939, fn. 13.) The *Herrera* court relied on language in the deed of trust that is virtually identical to the language in Courtois's deed of trust: that the borrower "agrees that MERS," as "nominee for Lender and Lender's successors and assigns," may "exercise . . . the right to foreclose and sell the Property." (*Herrera*, at pp. 1503, 1505.)

The Ninth Circuit Court of Appeals reached a similar conclusion on similar reasoning in *Ancheta v. Mortgage Electronic Registration Systems, Inc.* (9th Cir. 2018) 730 Fed.Appx. 509. The Ninth Circuit concluded the district court properly dismissed the plaintiff's claim premised on "[MERS]'s alleged lack of 'agency relationship' with the beneficiary." (*Ibid.*) The district court had specifically rejected the plaintiff's theory that "MERS lost its authority to make assignments during the course of [a] securitization process because of the sale of the note from" one lender, who was a member of MERS, to another lender, who was *not* a member of MERS. (*Ancheta v. Mortgage Electronic Registration Systems, Inc.* (N.D. Cal., Mar. 29, 2017, No. 16-CV-06520-TGR) 2017 WL 1164288, at p. *5; see also *Miller-Swift v. Mortgage Electronic Registration Systems, Inc.* (9th Cir. 2019) 783 Fed.Appx. 750, 751

10

[rejecting plaintiff's theory that "MERS . . . 'exited the chain of title' as a result of an assignment of the note to a non-MERS member"].)

Likewise, federal district courts in California have repeatedly rejected substantially similar challenges to MERS's authority. For example, in *Fung v. BSI Financial Services* (N.D. Cal., Nov. 7, 2017, No. 16-CV-07194-JSW) 2017 WL 8948335, the court rejected the plaintiffs' "argu[ment] that MERS could not act as nominee because the loan had been sold to [other lenders], neither of which were MERS members." (*Id.* at p. *4.) The court reasoned, "This argument is . . . contrary to the plain language of the Deed of Trust, which . . . provides that MERS has the authority to act for [the original lender]'s successors and assigns. [Citation.] This authority was in no way conditional on whether the successors and assigns were MERS members." (*Ibid.*; see also *Avila v. Wells Fargo Bank, National Association* (N.D. Cal., Dec. 23, 2016, No. C 16-05904 WHA) 2016 WL 7425925 at p. *3 [rejecting the plaintiff's "argu[ment] that MERS'[s] authority as nominee was vitiated because Goldman Sachs Mortgage Company, the initial assignee of [the lender], was not a member of the MERS registry"]; *Ratliff v. JPMorgan Chase Bank N.A.* (N.D. Cal., July 6, 2017, No. 17-CV-02155-EMC) 2017 WL 2876141, at *8 & fn. 3 [dismissing *post*foreclosure challenge because "even if the loan was transferred to [a] securitized trust" that was not a member of MERS, MERS was still authorized to act because the deed of trust "contemplates MERS acting as nominee 'for Lender *and* Lender's successors and assigns' "].)

Because Courtois's deed of trust includes the same language that countless courts have found fatal to similar challenges to MERS's assignment authority, we likewise find the language fatal to Courtois's challenge.

11

Accordingly, the trial court properly granted MERS's motion for judgment on the pleadings without leave to amend.

### III.  Statute of Limitations

Additionally, although the trial court did not reach the issue when ruling on MERS's motion, we further conclude MERS was entitled to judgment on the pleadings because the face of Courtois's first amended complaint shows her claims against MERS are time-barred.  (*SLPR*, *supra*, 49 Cal.App.5th at p. 317 [judgment on the pleadings " 'will be affirmed if proper on any grounds stated in the [motion], whether or not the court acted on that ground' "]; see *Martinez v. San Diego County Credit Union* (2020) 50 Cal.App.5th 1048, 1059.)

The first amended complaint reveals on its face that all of Courtois's claims against MERS are based on MERS's allegedly wrongful act of recording the First Assignment *in 2011*.  The longest statute of limitations applicable to any of Courtois's claims is four years.[3]  Thus, unless otherwise extended, the limitations period lapsed *in 2015*.  Courtois did not sue MERS *until 2019*.  Thus, on their face, her claims are time-barred.

Courtois argues the limitations periods were extended under the "delayed discovery rule," and because the harm to her is "continuing" or "ongoing."  We disagree.

---

[3]    The statute of limitations on a claim for slander of title is three years. (Code Civ. Proc., § 338, subd. (g).)  The statute of limitations on a claim for cancellation of instruments is, at most, four years.  (*Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319, 1326 [three years if fraud-based, otherwise four years].)  The statute of limitations on a UCL claim is four years.  (Bus. & Prof. Code, § 17208.)  And the statute of limitations on a declaratory relief claim is "the same limitations period as the underlying legal or equitable claim." (*JPMorgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th 678, 686.)

## A. Delayed Discovery

### 1. Legal Principles

The delayed discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*).) "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' " (*Ibid.*) "[W]e do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Ibid.*)

"The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. [P]laintiffs are charged with presumptive knowledge of an injury if they have ' " 'information of circumstances to put [them] on inquiry' " ' or if they have ' " 'the opportunity to obtain knowledge from sources open to [their] investigation.' " ' [Citations.] In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox, supra*, 35 Cal.4th at pp. 807-808, italics and fn. omitted.) Put differently, a plaintiff is on inquiry notice when "he at least suspects . . . that someone has done something wrong to him, 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding.' " (*State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 417.)

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be

13

barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' " (*Fox, supra,* 35 Cal.4th at p. 808.)

"[B]elated discovery is usually a question of fact, but may be decided as a matter of law when reasonable minds cannot differ." (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 375.)

### 2. Analysis

Courtois has not established she is entitled to the benefit of the delayed discovery rule. The gravamen of all of her claims is that MERS lacked the authority to record the First Assignment in 2011 because Countrywide had previously sold her loan in 2006 to a Goldman Sachs entity that was not a member of MERS. If the First Assignment was ever unauthorized, it was unauthorized when MERS recorded it in 2011. (See *Stalberg v. Western Title Ins. Co.* (1994) 27 Cal.App.4th 925, 929-930 [plaintiff's claim for slander of title accrued when the allegedly void document was recorded].)[4] Reasonable minds cannot differ that Courtois was on inquiry notice regarding alleged irregularities in the chain of title for her deed of trust *in 2012* when "strangers" to her loan commenced nonjudicial foreclosure proceedings against her by publicly recording the First Default Notice. Yet, Courtois did not sue MERS until more than four years later.

---

4       Courtois acknowledged in her briefing to the trial court that, absent tolling, "[a]rguably the date of recording an instrument (that is found to be void) may trigger SOL for slander of title . . . ."

Courtois argues her delayed filing is justified by the fact she did not learn until she obtained third-party discovery from MERS in this case that the Goldman Sachs entities that acquired her loan in 2006 were not members of MERS and, thus, MERS had no authority in 2011 to execute the First Assignment. She claims she was unable to discover this information sooner because it was concealed in MERS's private records. Courtois's own allegations belie this claim.

First, Courtois alleged in her first amended complaint that "*public records* demonstrate the [First] Assignment . . . contains false statements claiming the deed of trust was assigned to [Bank of America], by MERS." (Italics added.) She fails to explain, as required, which public records she is referring to, or why she could not have discovered them sooner. (See *Fox*, *supra*, 35 Cal.4th at p. 808.)

Second, Courtois's allegations in her original complaint demonstrate she was aware *before she obtained discovery from MERS* that (1) her loan was "sold to [Goldman Sachs Mortgage] in 2006," (2) Goldman Sachs Mortgage "holds no membership with MERSCorp," and (3) "therefore, MERS Database held no legal right to act as the 'beneficiary solely as nominee' in executing the [First] [A]ssignment." This is the crux of all of her claims against MERS in the first amended complaint.

The fact that Courtois did not *substantiate* her allegations regarding MERS's lack of authority until she obtained discovery from MERS is of no moment. Her prior allegations reveal she harbored a suspicion, which is all that is required to trigger the statute of limitations. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111 ["A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery."].)

15

Courtois argues in her appellate briefing that "she had no suspicion anything untoward was happening with her title until she filed her initial lawsuit against the parties for . . . unlawful dual tracking,"[5] at which point "her then attorney did an investigation into the loan" and first "formed a belief that the assignment by MERS was void." This argument fails to identify the specific information uncovered by that investigation, or, more importantly, explain why it could not have been uncovered sooner (e.g., when the First Assignment was recorded in 2011, or when the Second Assignment and First Default Notice were recorded in 2012).

In short, Courtois's allegations in her original complaint belie the factual basis for her claim to the delayed discovery rule. Consequently, traditional statute of limitations accrual principles apply, and Courtois's claims accrued, at the latest, in 2012. Thus, her assertion of claims against MERS in 2019 was untimely under even the longest applicable limitations period (four years).[6]

## B. Continuing Harm

Courtois also argues her claims are timely because "her harm is continuing and has not stopped" inasmuch as she remains at risk of being foreclosed upon based on void documents that originated with MERS's allegedly wrongful First Assignment. However, the recurring or ongoing

---

[5] "Dual tracking" refers to a lender proceeding with a foreclosure sale while simultaneously evaluating the defaulted borrower's application for a loan modification. (See *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 904.)

[6] Even if Courtois's claims against MERS related back to 2017 when she filed her original complaint against the other defendants, her claims would still be untimely—more than four years elapsed between the latest possible accrual in 2012, and her filing suit in 2017.

conduct at issue in the cases she cites to support her argument bear no similarity to MERS's isolated act here.  (See *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823 [disability discrimination in employment]; *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 786 [last overt act in a civil conspiracy to commit an ongoing fraud]; *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1200-1201 [recurring imposition of fraudulent charges for copier rental]; *Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1341 [recurring duty to pay music royalties].)

By contrast, Courtois's claims against MERS all arise from a single act MERS undertook in 2011, of which Courtois was or should have been aware by 2012 when she received the First Default Notice.  (See *Stalberg v. Western Title Ins. Co.* (1991) 230 Cal.App.3d 1223, 1230 ["A cause of action for slander of title accrues, and the statute begins to run, when plaintiff could reasonably be expected to discover the existence of the claim."].)

Accordingly, Courtois has not met her burden to establish that her claims were subject to delayed accrual on a continuing harm theory.  (See *Eghtesad v. State Farm General Ins. Co.* (2020) 51 Cal.App.5th 406, 411 [appellant's burden to show error, even on de novo review].)

## DISPOSITION

The judgment is affirmed.  Courtois to bear MERS's costs on appeal.


HALLER, J.


WE CONCUR:


McCONNELL, P. J.


DO, J.

17